HARRIET K. BOOTH & another[1] *vs.* WAYNE E. SILVA & others.[2]

No. 91-P-1181.

Worcester. February 9, 1993. - February 3, 1994.

Present: FINE, JACOBS, & IRELAND, JJ.

*Medical Malpractice*, Tribunal, Expert opinion. *Negligence*, Medical malpractice. *Evidence*, Expert opinion. *Witness*, Expert.

In a medical malpractice action against a doctor, the Commonwealth (acting through the University of Massachusetts Medical Center), and an association of visiting nurses arising from the treatment received by one of the plaintiffs as a surgical patient at the medical center, the plaintiffs' offer of proof, presented to a malpractice tribunal, was sufficient, if properly substantiated, to raise a legitimate question of liability appropriate for judicial inquiry under G. L. c. 231, § 60B, where the opinion of the plaintiffs' expert, that the doctor failed adequately to follow and attend to his patient, was supported by the expert's reference to particularized evidence of the presence of infection while the patient was hospitalized and to an absence of records demonstrating that the doctor saw the wound after surgery, informed himself of the results of a culture, or made proper inquiry of the nurses; and where, with regard to the medical center and the visiting nurses' association, this court concluded that, although there was no factual evidence in the offer of proof beyond that recited in the expert's statement to support his conclusions that the medical center failed to bring the culture report to the attention of a responsible medical person and that the visiting nurses' association failed to report "clinical progress" noted in its records, such extrinsic factual showing was not required. [19-23]

A medical malpractice tribunal considering a contention that a doctor failed adequately to follow and attend to his patient while she was hospitalized and to follow up on her condition after she was discharged acted well within its statutory authority when, at the defendants' request, it received in evidence the records of two clinic visits by the patient with the doctor or his associate after her discharge. [23-24]

---

[1] Steven Booth.

[2] The Commonwealth and Visiting Nurses Association of Central Massachusetts, Inc.

CIVIL ACTION commenced in the Superior Court Department on June 6, 1990.

Motions to dismiss were heard by *James P. Donohue,* J.

*Ronald L. Brandt* for the plaintiffs.

*Paul R. Greenberg* for Wayne E. Silva & another.

*Dwight D. Valentine* for Visiting Nursés Association of Central Massachusetts, Inc.

JACOBS, J. After a hearing, a medical malpractice tribunal convened pursuant to G. L. c. 231, § 60B, determined that the plaintiffs' offer of proof was insufficient. The plaintiffs appeal from judgments of dismissal[3] which were entered in the Superior Court after they failed to file the requisite bond.[4] The issues raised are (1) whether the offer of proof was sufficient and (2) whether the tribunal erred in admitting certain evidence offered by the defendants.

The plaintiffs' offer of proof consisted of an opinion letter and statement of qualifications of an expert, discharge summaries and operation reports of the University of Massachusetts Medical Center (UMMC) for admissions of Harriet K. Booth (Booth) on April 14, 1988, and May 11, 1988, and two letters dated November 8, 1988, and November 28, 1989, from a physician who treated Booth after the events that are the subject of her action. These submissions establish the following factual background. Booth was admitted to UMMC on April 14, 1988, for the repair of an incisional scar that was associated with earlier abdominal surgery. The defendant Dr. Silva performed the repair on April 15, 1988, and the defendant Visiting Nurses Association (VNA) attended to Booth after April 21, 1988, the date of her discharge. Subsequent to the operation, Booth developed a wound infection, and she was readmitted to UMMC on May

[3]Separate judgments were entered on motions filed pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

[4]General Laws c. 231, § 60B, as amended by St. 1986, c. 351, § 21, states in pertinent part: "If a finding is made for the defendant or defendants in the case the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of six thousand dollars in the aggregate . . . . If said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed."

11, 1988, where Dr. Silva performed a second operation to explore and debride her abdominal wound.

The plaintiffs' expert wrote that Dr. Silva "departed from the standard of medical care by failing to observe the onset of [Booth's] abdominal wound infection while the patient was in the hospital [in April], even though the signs of a wound with unexplained drainage [were] present from the day before discharge. . . ." He further stated that Dr. Silva "had every reason to follow the patient and her infection personally in his office during the interim between 4/24/88 and 5/11/88 when she came back in hospital with a relatively extensive wound infection." In arriving at these opinions, the expert relied on the following information which he set forth in his letter but which was not otherwise contained in the offer of proof: while Booth was in the hospital "a house officer" was concerned enough about her infection to order a culture on April 20, 1988,[5] and to put her on "an inappropriate antibiotic"; that the records do not indicate that Dr. Silva informed himself or was informed about the results of the culture; there is no indication in the UMMC records of any progress notes by Dr. Silva and that, therefore, there is "nothing which indicates he saw the wound after the [April] surgery"; "[t]here is no information to suggest Dr. Silva inquired of the V.N.A. nurses how the patient, who was his medical responsibility was faring under their care." The expert also noted that Dr. Silva's failure to exercise "timely and proper medical responsibility" permitted the infection to "progress to an unnecessarily extensive degree" with attendant damages.

The expert also stated that the Commonwealth, acting through UMMC, "departed very significantly from the standard of care" by not bringing the report of the wound culture to the attention of Dr. Silva. He further wrote, "There is every indication that the report was put on the record after

[5]The plaintiffs' record appendix includes a UMMC progress record, dated April 20, 1988, which indicates that the "wound drainage [was] sent for culture" and a "culture results" report dated April 25, 1988. Neither of these was included in the offer of proof.

the patient had gone home and never brought to a responsible medical person's attention." With respect to VNA, he opined that its nurses departed significantly from the applicable "standard of expected nursing care by not reporting the obvious clinical progress noted in their records[6] of this patient's wound infection, to the responsible medical person, Dr. Wayne Silva" and that these departures from the applicable standards of care caused harm to Booth. Neither the culture report nor the nurses' records to which the expert alluded are contained in the offer of proof. During the hearing, the tribunal, at the request of counsel for Dr. Silva, agreed to consider records of Booth's visits to a UMMC clinic on April 25, 1988, and May 9, 1988.

The only independent support in the offer of proof for any of the statements made by the expert are contained in the UMMC records and consisted of the following. (1) According to the discharge report dated April 21, 1988, Booth, on her fifth post-operative day, "was noted to have a little bit of bloody discharge in the midpoint of her incision." (2) The May 17, 1988, discharge summary indicated that Booth's "post-operative course . . . was complicated by a wound infection which was treated with antibiotics and home dressing changes." (3) Dr. Silva's May 11, 1988, report states that the patient "at home [after her April 21, 1988, discharge] developed a pocket beneath her wound closure which eventually opened." The sole mention of VNA in the offer of proof, other than in the expert's letter, was a statement in the UMMC discharge summary that the patient "was discharged on 4/21/88 with VNA for dressing changes. . . ." The plaintiffs' lawyer's oral presentation at the tribunal hearing was confined to a review of the expert's letter.

1. *Sufficiency of the offer of proof.* The controlling statute establishes the essential inquiry for a medical malpractice tribunal — whether "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's

---

[6]Counsel for VNA, during the tribunal hearing, referred to a "daily record" of the nurses' activities.

case is merely an unfortunate medical result." G. L. c. 231, § 60B, as inserted by St. 1975, c. 362, § 5. Beyond that, the statute offers a tribunal little guidance other than to indicate that "[a]dmissible evidence shall include, but not be limited to, hospital and medical records, nurses' notes, x-rays and other records kept in the usual course . . ., statements of fact or opinion on a subject contained in a published treatise, periodical, book or pamphlet or statements by experts without the necessity of such experts appearing at [the] hearing." Appellate decisions have fleshed out the applicable standard by establishing that "the tribunal's task should be compared . . . to the trial judge's function in ruling on a defendant's motion for directed verdict." *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). Under that directed verdict test, "[a] plaintiff's offer of proof as to negligence will prevail before a malpractice tribunal . . . (1) if a doctor-patient relationship is shown, (2) if there is evidence that the doctor's performance did not conform to good medical practice, and (3) if damage resulted therefrom." *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980). The same standard applies to any "provider of health care" as that term is defined in § 60B.

No issue is raised whether the requisite patient-health care provider relationship existed between Booth and the defendants or whether she suffered damage from their alleged negligence. We deal, therefore, only with the question whether the offer of proof sufficiently established the existence of "evidence" that the several defendants did not conform to good medical practice.

An acceptable offer of proof must comprise more than mere conclusory allegations or statements of counsel. *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 467-468 (1980). *Kulas* v. *Weeber*, 20 Mass. App. Ct. 983, 984 (1985). The statement of the plaintiffs' expert in this case goes well beyond allegation. He supports his contention that Dr. Silva failed adequately to follow and attend to his patient by reference to particularized evidence of the presence of infection while Booth was hospitalized and to an absence of records demonstrating that Dr. Silva saw the wound after

surgery, informed himself of the results of the culture, or made proper inquiry of the visiting nurses. He buttresses his opinion of substandard conduct of UMMC by stating that the culture report was not brought to the attention of a responsible medical person, and he specifically faults VNA for not reporting "clinical progress" noted in their records.

The defendants correctly point out that, with respect to UMMC and VNA, there is no factual evidence in the offer of proof outside of that recited in the expert's statement to support his conclusions. They contend that the offer of proof therefore falls short. Although the question is a close one, we disagree. Whether there must be evidence in the offer of proof extrinsic to and supportive of the opinion of the expert has not been addressed squarely by our appellate decisions, and, while there are intimations to the contrary,[7] we conclude that, in light of the words of the statute, its purpose, and the current evidential requirements for admission of expert opinion, such extrinsic factual showing is not required.

The disjunctive listing of various forms of "admissible evidence" in § 60B includes the category of "statements by experts." A strict reading, coupled with the observation that such admissible evidence awaits proper substantiation not before the tribunal but "at trial," *Gugino* v. *Harvard Community Health Plan*, 380 Mass. at 467-468, indicates that a factually based statement by a qualified expert, without more, is sufficient to meet the tribunal standard. The terms of the statute do not signal a difference between the substan-

---

[7]See *Kapp* v. *Ballantine*, 380 Mass. at 195 ("Even if we accept certain facts argued by the plaintiff as if they were documented in the record . . ."); *Gugino* v. *Harvard Community Health Plan*, 380 Mass. at 468 (in addressing an argument that the opinion of the plaintiffs' expert lacked factual basis, the court stated that the plaintiffs' "affidavit [in the offer of proof] sufficiently . . . provide[s] the basis for the expert's opinions"); *Blood* v. *Lea*, 403 Mass. 430, 434 (1988)(the expert's "opinion is based on the medical information in the records . . . [and] is not mere 'speculation,' but rather an opinion based on records before the tribunal"); *Perez* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 413 Mass. 670, 676 (1992)("The offer of proof does not contain any evidence . . . [and] [t]he expert's statement . . . is not substantiated by evidence"). See also *Dumes* v. *Genest*, 30 Mass. App. Ct. 379, 382 (1991).

tiation requirement for an expert's opinion and the other admissible forms of tribunal evidence. Nor is our conclusion avoided by treating the issue as involving not substantiation[8] but rather foundational basis, since, even at trial, the traditional rule has been changed so that an expert may base his opinion upon knowledge of facts not in evidence so long as such facts are independently admissible. *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531 (1986) ("Such . . . change . . . eliminate[s] the necessity of producing exhibits and witnesses whose sole function is to construct a proper foundation for the expert's opinion"). Liacos, Massachusetts Evidence § 7.10.2, at 414-415 (6th ed. 1994). To the extent that a tribunal rejects an offer of proof on the basis that an expert formed his opinion on facts which do not appear in the medical record, it engages "in an appraisal of the weight and credibility of the plaintiff's evidence, an exercise not permitted to a malpractice tribunal." *DiNozzi* v. *Lovejoy*, 20 Mass. App. Ct. 973, 974 (1985), citing *Gugino* v. *Harvard Community Health Plan*, 380 Mass. at 468. Moreover, "allowance should be made for the fact that the hearing before the tribunal ordinarily precedes discovery. In particular, inadequacies in defendants' records should not disadvantage the plaintiff."[9] *Ibid.*

"The apparent [legislative] purpose [for enactment of § 60B] was to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance. . . ." *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 655 n.4 (1977). *Brodie* v. *Gardner Pierce Nursing & Rest Home, Inc.*, 9 Mass. App. Ct. 639, 641 (1980). That objective would be ill-served by tribunal rejection of the opinions of assumedly qualified experts, generally presented

---

[8]"The word 'substantiated' has been defined to mean 'to establish the existence or truth of, by true or competent evidence.'" *Graves* v. *School Comm. of Wellesley*, 299 Mass. 80, 86 (1937), quoting from *State* v. *Lock*, 302 Mo. 400, 412 (1924). See Black's Law Dictionary 1429 (6th ed. 1990).

[9]As of November 28, 1990, the date of the tribunal hearing, the defendants had not filed answers to the plaintiffs' interrogatories that had been submitted on July 15, 1990.

by counsel operating under the ethical strictures of Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974), merely because the factual assertions expressed in those opinions are not corroborated by other submissions in the offer of proof. Not only would such demanding threshold testing increase the likelihood of meritorious actions being screened out along with frivolous claims, it also would run counter to the course of developing appellate lenity toward § 60B offers of proof. See *Blake* v. *Avedikian*, 412 Mass. 481, 483-484 (1992) (the imprinting and signing of the abbreviation "D.M.D." after the expert's name on an opinion letter typed on the letterhead of a professional association "met the 'extremely lenient' standard of establishing an expert's qualifications before a medical malpractice tribunal"); *Mataitis* v. *St. Goar*, 416 Mass. 325, 327 (1993) ("a plaintiff's presentation to a tribunal need not state what a defendant physician should have done when that presentation adequately states that the defendant negligently failed to act and that the plaintiff was harmed as a result"); *Kilmartin* v. *Lowell Gen. Hosp.*, 23 Mass. App. Ct. 901, 902 (1986) (indicating that an offer of proof ought to be given a "permissibly indulgent reading").

2. *The defendants' evidence.* When the tribunal, at the defendants' request, received in evidence the records of two clinic visits by Booth, it acted well within its statutory authority to "summon or subpoena [admissible evidence or experts] to substantiate or clarify any evidence which has been presented before it . . . ." Those records reveal that Booth's infection was treated during a clinic visit with Dr. Silva or his associate on April 25, 1988, four days after her discharge from the hospital, and again on May 9, 1988. At its best, this information does not address those aspects of the expert's opinion that allege substandard treatment in the course of Booth's hospitalization and while at home prior to April 25, 1988, and the plaintiffs still have a sufficient offer of proof. Moreover, given the directed verdict standard, we doubt whether evidence additional to that contained in the offer of proof may be used by the tribunal to diminish the offer. Compare *Kopycinski* v. *Aserkoff*, 410 Mass. 410, 418 (1991)

("Any factual dispute as to the 'meaning' of the record [before a medical malpractice tribunal] is for the jury"); *Kilmartin* v. *Lowell Gen. Hosp.*, 23 Mass. App. Ct. at 902 ("The weight to be accorded [an expert's] opinion in relation to contrary evidence belongs at a later stage of proceedings").

Accordingly, the judgments of dismissal are vacated, and the plaintiffs' complaint is to be reinstated. The determination of the tribunal as to each defendant is to be replaced by a decision that the plaintiffs' offer of proof, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*So ordered.*