## MICHELLE LaFOND & others[1] vs. EDWARD S. CASEY.

No. 95-P-1858.

Suffolk. March 19, 1997. - July 24, 1997.

Present: KASS, GREENBERG, & FLANNERY, JJ.

*Medical Malpractice,* Tribunal, Bond. *Negligence,* Doctor.

The correctness of a medical malpractice tribunal's decision that an offer of
proof was not sufficient to raise a legitimate question of liability appropri-
ate for judicial inquiry remains open for appellate review even after a
judgment for the defendant after trial has been entered. [235-237]
Where plaintiff's offer of proof before a medical malpractice tribunal was
based on assumed facts not supported by the evidence and did not establish
a causal connection between the action of the physician and the alleged
harm suffered, the tribunal correctly found that the offer of proof was not
sufficient to raise a legitimate question of liability appropriate for judicial
inquiry and correctly required the plaintiffs to post a bond: where judgment
was later entered for the defendant after trial, the defendant was entitled to
payment on the bond. [237-238]

CIVIL ACTION commenced in the Superior Court Department on
October 11, 1990.

The case was tried before *Charles F. Barrett,* J.

*Elizabeth N. Mulvey* for the plaintiffs.

*Terésa J. Farris* for the defendant.

KASS, J. At the medical malpractice tribunal stage, there was
a determination that Michelle LaFond, the primary plaintiff, had
experienced an unfortunate medical result, i.e., that the evidence
presented to the tribunal, if properly substantiated, was not suf-
ficient "to raise a legitimate question of liability appropriate for
judicial inquiry." G. L. c. 231, § 60B, inserted by St. 1975,
c. 362, § 5. In order to maintain their action in the Superior
Court, the plaintiffs filed with the court a bond in the amount of
$6,000. See G. L. c. 231, § 60B, as amended by St. 1986,

---

[1] Karen LaFond, individually and as next friend, and Paul LaFond.

c. 351, § 21. The case was tried before a jury, which returned a verdict for the defendant, Dr. Edward S. Casey.

Thereupon, Dr. Casey moved to enforce the payment of the bond, but the plaintiffs protested that the medical malpractice tribunal had erred in the first instance in ruling that their submission to the tribunal had not made out a case worthy of judicial inquiry. If the tribunal was mistaken in so deciding, the plaintiffs urged, then it was mistaken about requiring the plaintiffs to file a bond, and that issue, the plaintiffs insisted, was open even after a jury verdict adverse to the plaintiffs. A judge of the Superior Court allowed a motion to enforce execution of the tribunal bond and the relief that the plaintiffs ask of us on appeal is from that order, i.e., that there should not be payment to the defendant on the bond.

If the question of the correctness of the tribunal's order of a $6,000 bond is open, then the second question on appeal is whether the plaintiffs' tribunal offer of proof was sufficient to have gained access to a trial in the Superior Court without the requirement of a bond.[2] If it was not, then the bond is to be paid in any event.

Underlying these questions was a complaint against Dr. Casey, an obstetrician, that he acted negligently while he attended Karen LaFond during the birth of Michelle. Stripped of detail, the claim is that there were indicators during the mother's labor that should have impelled Dr. Casey to perform a blood test that would have told whether the fetus was in distress. If that test, a scalp ph test,[3] indicates fetal distress, or if the test could not be made, then, say the plaintiffs, Dr. Casey should have performed a Caesarean section.

Nothing in the offer of proof indicates that Michelle was born with any abnormality. The baby had an Apgar score of nine (on a scale of ten), breast fed normally, and was discharged without notation of any defect. Nine months later, the child manifested

---

[2] A judge of the Superior Court denied a motion for reconsideration of the defendant's motion to enforce payment of the tribunal bond. The parties stipulated to a stay of execution of the tribunal bond pending determination of this appeal.

[3] If an obstetrician is concerned that a baby in labor may be in distress — Michelle had exhibited a "nonassuring" sign by a decline in the beat-to-beat variability of the fetal heart — a test that can be performed, if the fetus is properly positioned, is to draw blood from the scalp and to test the blood for acid content. High acid content would indicate the baby's blood was insufficiently oxygenated.

seizure disorder and, subsequently, developmental delay. The plaintiffs attribute the baby's neurological dysfunction to oxygen deprivation ("fetal hypoxia") during the birth process.

1. *Whether the question of the tribunal's error is open after the jury have returned a verdict for the defendant.* At first glance, a defendant's verdict in a medical malpractice case seems to verify the correctness of a medical malpractice tribunal's determination that the plaintiff has not presented a case worthy of going to trial. Payment of the bond appears to be in order as minimal compensation to the defendant for having been put to the expense of mounting a defense against a claim that was not justified. It seems counterintuitive to reexamine at that late stage the correctness of the tribunal's decision. Indeed, two cases, *Mood* v. *Kilgore*, 384 Mass. 459, 464 (1981), and *Muir* v. *Hall*, 37 Mass. App. Ct. 38, 39 (1994), have said that judgment on the merits in a medical malpractice case in which a bond has been posted in order to maintain the action, "will automatically make the bond available to pay defense costs."

On closer examination, however, the decisional law and sound policy suggest that the correctness of a tribunal's decision that an offer of proof was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry remains susceptible of appellate review, even after a judgment for the defendant has been entered.

As a means to the end of keeping medical malpractice insurance premiums in check, *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 647-648 (1977); *Aker* v. *Pearson*, 7 Mass. App. Ct. 552, 555 (1979), the Legislature in the enactment of G. L. c. 231, § 60B, designed a screening mechanism which discourages frivolous medical malpractice claims. *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 655 n.4 (1977). *Brodie* v. *Gardner Pierce Nursing & Rest Home, Inc.*, 9 Mass. App. Ct. 639, 641 (1980).

To determine whether a medical malpractice claim makes the grade for a trial, the tribunal applies a directed verdict standard to the plaintiff's offer of proof, i.e., if there is competent evidence that places in contest whether a doctor-patient relationship existed, whether there is evidence that the doctor's performance did not conform to good medical practice, and whether that failure caused damage. *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980). *Kulas* v. *Weeber*, 20 Mass. App. Ct. 983 (1985). If the tribunal concludes that the evidence proffered, even if substantiated, does not add up to an actionable medical

malpractice claim, the plaintiff may, nevertheless, proceed to trial by filing with the clerk of the court a $6,000 bond "payable to the defendant or defendants in the case for costs assessed, including witness and experts' fees and attorney's fees if the plaintiff does not prevail in the final judgment." G. L. c. 231, § 60B, as appearing in St. 1986, § 351, § 21. Failure to post the bond results in dismissal of the action, but from that dismissal, the plaintiff may take to an appellate court claims of legal error by the tribunal. *McMahon* v. *Glixman*, 379 Mass. 60, 63-64 (1979). For illustrations see *DiNozzi* v. *Lovejoy*, 20 Mass. App. Ct. 973 (1985); *Kilmartin* v. *Lowell Gen. Hosp.*, 23 Mass. App. Ct. 901 (1986).

If a plaintiff loses an appeal from a judgment of dismissal based on the tribunal proceeding that, of course, is the end of the road. *McMahon* v. *Glixman*, 379 Mass. at 64. That is one reason that a plaintiff, if the plaintiff has some confidence in the case, may choose to post the requisite bond and to proceed to trial in the Superior Court. Soft spots in a tribunal presentation can perhaps be shored up in the court proceeding. There is also the advantage of getting to a resolution of the merits sooner, without the considerable delay of prosecuting and concluding an appeal.

In *McMahon* v. *Glixman*, 379 Mass. at 64, the court (Quirico, J.) spoke directly to the point in question. Should a plaintiff decide that he is not "willing to assume the potentially fatal risks of pretrial review after failing or refusing to file a bond," that plaintiff "may instead file his bond, go to trial, and, if he loses, have the alleged error by the tribunal reviewed along with any other alleged errors arising from the trial." *Ibid.* The correctness of the tribunal's determination was considered by us after a jury verdict for the defendant in *Kulas* v. *Weeber*, 20 Mass. App. Ct. at 983-984, together with the question of the propriety of admitting the decision of the tribunal as evidence before the jury. There was, thus, an issue arising out of the trial in the Superior Court that was part of the appellate agenda. Only in such circumstances, the defendant argues in the instant case, may the tribunal's action be eligible for postverdict review. The defense bases that contention on the phrase in *McMahon* v. *Glixman*, that immediately follows the statement that tribunal error may be reviewed, viz., "along with any other alleged errors arising from the trial." 379 Mass. at 64. We think that reads a dependency into the clauses of the sentence that is not there, and that tribunal error is subject to postverdict review

independently of other appellate issues. Cf. *Pallazola* v. *Rucker*, 602 F. Supp. 459, 461-462 (D. Mass. 1984).

There is a further reason for deciding that tribunal error may be presented for appellate consideration after trial and a judgment for the defendant. Were it otherwise, plaintiffs would feel compelled always to take a separate appeal from adverse tribunal decisions, delaying consideration of the merits and, in some instances, producing two appeals in one case: first an appeal from the tribunal decison; second an appeal from the judgment after trial. Some of those tribunal error appeals, if deferred, would be mooted when plaintiffs had a favorable result in court. The defendant argues the point that a physician, after being put to the expense of trial and winning, ought not to be put to further expense to collect the proceeds of the bond which, in the run of cases, will only pay a fraction of the defense costs. The burden of that expense falls on a plaintiff as well, and one would suppose for that reason there will be comparatively few posttrial appeals of a tribunal decision.

The correctness of the tribunal's decision is open in this case.

2. *Correctness of the tribunal's decision.* Under the directed verdict standard, we examine the evidence indulgently in favor of the plaintiff. *Kilmartin* v. *Lowell Gen. Hosp.*, 23 Mass. App. Ct. at 902. *Booth* v. *Silva*, 36 Mass. App. Ct. 16, 23 (1994). The plaintiffs' case before the tribunal rested on an opinion of Dr. Marshall Klavan, who, as noted earlier in this opinion, identified the failure to do a scalp ph test and to take measures to accelerate the birth of Michelle by prompt Caesarean section, thus, subjecting the baby to prolonged hypoxia. That opinion rested on an assumption that the baby had suffered from hypoxia during the birth process, and that the oxygen deprivation accounted for neurological deficits the child later manifested.

Yet the hospital history records delivery of a normally functioning child, without any manifestations of hypoxia. Dr. Klavan's opinion is based on an assumption of facts that have no roots in the evidence and fails at baseline to establish a causative connection between Dr. Casey's management of the birth and the unfortunate condition with which the child was later afflicted. Compare *Booth* v. *Silva*, 36 Mass. App. Ct. at 22. Neither Dr. Klavan (who was trained in obstetrics and gynecology), nor any other expert, such as a pediatrician or pediatric neurologist, offered any evidence about the likely connection between Michelle's difficulty, as manifested, and birth trauma.

The offer of proof was fatally deficient and the tribunal rightly found that the offer of proof was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.[4] See *Keppler* v. *Tufts*, 38 Mass. App. Ct. 587, 588-590 (1995). Compare *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. 714, 717-719 (1994).

The judgment is affirmed. The order for payment to the defendant on the bond is affirmed.

*So ordered.*

---

[4]Parenthetically, in his trial testimony, submitted as a supplementary appendix by the defendant, Dr. Klavan conceded that he had not consulted Michelle's pediatric records and that he, himself, could not speak professionally about the nature or cause of Michelle's condition. The defendant argues that if we are to have a late look at the tribunal's decision, then we should look with the aid of Dr. Klavan's later testimony. We are examining, however, what the tribunal decided and, without foreclosing the possibility that in some circumstances it might be appropriate to take a retrospective look, in this case we have not considered any material other than that offered to the tribunal.