After the death of her premature twins, nineteen year old Erin Clifford[4] was admitted to Arbour Hospital, on a conditional voluntary status, G. L. c. 123, §§ 10 and 11, in order to receive mental health treatment. On July 3, 2012, Erin asked to be discharged, and signed a so-called "3-day notice." See G. L. c. 123, § 11. On July 6, 2012, Dr. Diego Martinucci evaluated Erin, provided her with an after-care treatment plan, and discharged her. The following day, Erin died in a homeless shelter as the result of "acute mixed drug intoxication."
The plaintiff, Denise M. Clifford, Erin's aunt and the personal representative of Erin's estate, brought a wrongful death action in Superior Court, essentially alleging negligence in the discharge of Erin from Arbour Hospital.[5] The medical malpractice tribunal determined that the plaintiff's offer of proof was insufficient. After the plaintiff failed to post the statutory bond, see G. L. c. 231, § 60B, a judge of the Superior Court dismissed the case without prejudice. We affirm.
At the tribunal stage, the plaintiff was obligated to present an offer of proof demonstrating, among other things, that Martinucci was a provider of health care as defined in G. L. c. 231, § 60B, who failed to exercise that degree of care and skill expected of "the average member of the profession practicing the specialty, taking into account the advances in the profession," and that such failure more probably than not caused the harm. Palandjian v. Foster, 446 Mass. 100, 104 (2006) (quotation omitted). See Keppler v. Tufts, 38 Mass. App. Ct. 587, 591-592 (1995) ; Goudreault v. Nine, 87 Mass. App. Ct. 304, 308 (2015). "Establishing the applicable standard of care typically requires expert testimony" from a "witness [who] has sufficient education, training, experience and familiarity with the subject matter of the testimony." Palandjian, supra at 105-106 (quotation omitted). Like the tribunal itself, we do not "examine the weight or credibility of the evidence" but instead "view the evidence contained in the offer of proof in the light most favorable to the plaintiff." Goudreault, supra at 308-309.
The plaintiff's offer of proof contained a "forensic expert evaluation" signed by "Helen M. Farrell, M.D.," identified further only as a "Forensic Psychiatrist." The evaluation was not in affidavit form, it was not on letterhead, and it did not provide any contact information. The evaluation also did not provide any information regarding Dr. Farrell's education, training, experience, practice areas, or specialties. We assume, without deciding, that the plaintiff adequately established Dr. Farrell's expertise, sufficient to allow her to provide opinion evidence, under "the 'extremely lenient' standard of establishing an expert's qualifications before a medical malpractice tribunal." Blake v. Avedikian, 412 Mass. 481, 483 (1992).
Even so, Dr. Farrell's evaluation does not establish either the applicable standard of care or either Arbour Hospital's or Martinucci's breach thereof. Although Dr. Farrell opines regarding practice standards, she does not indicate that she in fact is familiar with the standards she purports to identify. While we acknowledge that such matters need not be expressed through rote invocation of any particular "magic words" they nonetheless must be "expressed with sufficient firmness and clarity." Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 235 (2005). Dr. Farrell did not do so.
Moreover, Dr. Farrell's assertions and conclusions, particularly with respect to medical causation, appear not only to be, at least in part, without disclosed factual basis, but also fail to address critical, statutorily-mandated criteria. The record establishes that Erin voluntarily admitted herself for care under G. L. c. 123, § 10(a ). Erin demanded release on July 3, executing a § 11 three-day waiver at that time. After Erin demanded discharge, the hospital and Martinucci were required, under § 11, to discharge her by no later than July 6, as Martinucci did. Martinucci's only other option was to initiate an emergency petition for involuntary commitment. To do so, Martinucci would have had to have "reason to believe that failure to hospitalize would create a likelihood of serious harm by reason of mental illness," G. L. c. 123, § 12(a ), and "that no less restrictive alternative to hospitalization is appropriate." Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 780 & n.8 (2008). See G. L. c. 123, § 8(a ).
Although Dr. Farrell opines that Martinucci's conduct fell below the standard of care "in terms of conducting and documenting an inadequate discharge risk assessment," Dr. Farrell does not explain how such deviation is relevant to the discharge decision as mandated by law under § 11 or that, had such adequate evaluation been conducted, it would have revealed that grounds existed under § 12(a ) for an involuntary commitment. That is, Dr. Farrell does not purport to opine that: Erin was, at the time of discharge, in fact "mentally ill" within the meaning of § 12(a ) ; no less restrictive environment than involuntary hospitalization was appropriate; or an average qualified specialist in like circumstances would have concluded at the time of discharge that the deceased was at risk "of serious harm by reason of mental illness" such that she must be involuntarily confined. Lacking such links we are left with little more than conjecture on which to conclude that Martinucci's purported failure to conduct and document more thoroughly the discharge risk assessment more probably than not was a cause of Erin's accidental drug overdose. Keppler, 38 Mass. App. Ct. at 591-592. LaFond v. Casey, 43 Mass. App. Ct. 233, 237-238 (1997).
The tribunal properly determined that the plaintiff's offer of proof was insufficient. In light of this disposition, we need not address the parties' remaining arguments.
Judgment affirmed.

As the plaintiff and her niece share a surname, we use first names to avoid confusion.

The complaint also contained a claim for breach of contract for medical care and a violation of G. L. c. 93A arising out of the claims of medical malpractice.