A medical malpractice tribunal found that there was not sufficient evidence to raise a legitimate question of liability as to four of the defendant physicians and Spaulding Rehabilitation Hospital-Cambridge (Spaulding).[4] After the plaintiff failed to post a bond as required by G. L. c. 231, § 60B, separate judgments of dismissal entered as to those defendants. On the plaintiff's appeal, see Kapp v. Ballantine, 380 Mass. 186, 190-191 (1980), we affirm the judgment as to two physicians, and we vacate the judgments as to the two other physicians and Spaulding.
Discussion. The tribunal determines whether the evidence presented "is sufficient to raise a legitimate question of liability appropriate for judicial inquiry." G. L. c. 231, § 60B. To prevail, a plaintiff must show (1) that the defendant is a provider of health care, (2) that the physician's performance did not conform to good medical practice, and (3) that damages resulted therefrom. See Santos v. Kim, 429 Mass. 130, 133 (1999) ; Kapp, 380 Mass. at 193. The tribunal may not evaluate the weight and credibility of the evidence at this stage. DiGiovanni v. Latimer, 390 Mass. 265, 269 (1983). We, in turn, evaluate the evidence using a standard similar to a directed verdict standard, Gugino v. Harvard Community Health Plan, 380 Mass. 464, 467-468 (1980), which is whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff" (citation omitted). Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972).
1. Liability of Drs. Chong and Dey. The plaintiff's offer of proof did not explain, through her experts' opinions or otherwise, how Drs. Chong and Dey deviated from the standard of care owed her husband, Duarte A. Luis (decedent). Without more substantial allegations, the tribunal was correct in concluding that the plaintiff did not raise a legitimate question of liability as to these physicians.
We measure the standard of care by asking "whether the physician ... has exercised the degree of care and skill of the average qualified practitioner, taking into account the advances in the profession." Brune v. Belinkoff, 354 Mass. 102, 109 (1968). One of the plaintiff's experts, Dr. Schmidt, opined only that the decedent, while at the Massachusetts General Hospital (with which Drs. Chong and Dey were affiliated), was administered a type of chemotherapy "usually" reserved for more active patients. The other expert, Dr. Metzger, did not address Drs. Chong's and Dey's liability at all. The word "usually," without more, does not indicate that another "average qualified practitioner" would not have prescribed the same treatment in the decedent's case considering his entire complex medical history. Even viewing the offer of proof in the light most favorable to the plaintiff, it was insufficient to raise a question of Drs. Chong's and Dey's liability.
2. Liability of Dr. Sanchorawala. In regard to Dr. Sanchorawala of the Boston Medical Center (BMC), Dr. Schmidt opined that "[t]he standard of care required that the BMC Defendants carefully discuss the risk/benefit of autologous stem cell transplant" with the decedent, yet they failed to disclose to him "that he was not eligible for autologous transplant according to standard criteria" or to warn him "of the marked increase in death associated with progressive kidney failure with the high dose chemotherapy that was recommended." Dr. Schmidt further opined that this breach contributed to a deterioration in the decedent's condition. Dr. Sanchorawala counters that this opinion, in referring generally to the "BMC Defendants," failed to distinguish her actions from those of another BMC physician, Dr. Seldin, or to describe how her actions contributed to the decedent's injury.
We do not require such specificity when an expert asserts that each physician participating in a decedent's care was responsible for the death. See Kopycinski v. Aserkoff, 410 Mass. 410, 418 (1991). Although the medical records before us do not definitively show whether the decedent was informed of the risks of the stem cell transplant, they do contain a note signed by Dr. Sanchorawala (and listing her as the "[p]rovider"), stating that at an office visit on October 26, 2011, for which Dr. Seldin was also present, the "risk of acute [or] chronic renal failure during post [stem cell transplant] period and need for dialysis [was] explained to [patient] and his wife." This gives rise to a permissible inference that Dr. Sanchorawala was involved in informing the decedent of the risks of the procedure. Assuming (as we must) the validity of Dr. Schmidt's opinion that none of the BMC defendants sufficiently discussed the risks with the decedent or obtained proper informed consent, there is enough in the offer of proof for the plaintiff to go forward with her case against Dr. Sanchorawala.
3. Liability of Dr. Wui and Spaulding. Finally, Dr. Metzger opined that Dr. Wui failed to diagnose and timely treat the decedent's sepsis. Dr. Metzger stated that the standard of care required Dr. Wui to immediately respond and intervene when (as was observed at Spaulding) the decedent's "oxygen saturation [levels] began to fall and he complained of shortness of breath ... coupled with a cough which produced yellow sputum." Dr. Wui and Spaulding argue that this was a conclusory, blanket criticism rather than a specific allegation of negligence. See Booth v. Silva, 36 Mass. App. Ct. 16, 20 (1994) ("offer of proof must comprise more than mere conclusory allegations"). We are unpersuaded.
Dr. Metzger opined that the decedent "exhibited a host of symptoms that should have alerted the defendants of a worsening medical condition, which required that they treat him emergently instead of monitor him. The current standard of care for a patient with severe neutropenic sepsis is immediate admission to a hospital capable of aggressive management." Regardless of whether this opinion was correct, it was not conclusory; it went "well beyond allegation" and, as indicated supra, was supported "by reference to particularized evidence of the presence of infection." Id. Cf. Rahilly v. North Adams Regional Hosp., 36 Mass. App. Ct. 714, 722 (1994) (opinion as to delay in treatment was sufficient in offer of proof).
We also reject Dr. Wui's and Spaulding's argument that Dr. Metzger's opinion should be disregarded as unsupported by the medical records submitted to the tribunal. "[E]vidence in the offer of proof extrinsic to and supportive of the opinion of the expert" is not required. Booth, 36 Mass. App. Ct. at 21. "[A] factually based statement by a qualified expert, without more, is sufficient to meet the tribunal standard." Id. [4]
Conclusion. We affirm the judgment as to Drs. Chong and Dey. We vacate the judgments as to Drs. Sanchorawala and Wui, as well as Spaulding, and remand for further proceedings as to them.
So ordered.
Affirmed in part; vacated in part

The tribunal found in the plaintiff's favor in her claims against Massachusetts General Hospital and Dr. Shin. Dr. Seldin, who had been affiliated with the Boston Medical Center, died before the tribunal was convened; the tribunal deferred any decision as to the potential liability of his estate.

Spaulding, evidently named as a defendant on a respondeat superior theory, see Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 321-322 (2002), makes no argument as to why, if the case proceeds against Dr. Wui, it should not also proceed as to Spaulding.