NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1204

ELIZABETH OWENS

vs.

ORBELINA ERAZO & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Elizabeth Owens, suffered an injury while hospitalized after hip surgery.  She brought a medical malpractice action against Orbelina Erazo, R.N., Ron Agustin, P.C.A., Lauren O'Hara, P.T., and Brigham & Women's Faulkner Hospital (hospital).  Defendants Erazo and O'Hara (collectively, defendants) subsequently filed requests for a medical malpractice tribunal.  See G. L. c. 231, § 60B.  The tribunal found in favor of the defendants.  Owens did not post the required bond, and a Superior Court judge entered a separate and final judgment for the defendants pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).  Owens now appeals, claiming that

_____

[1] Ron Agustin, Lauren O'Hara, and Brigham & Women's Faulkner Hospital, Inc.

the medical malpractice tribunal erred in determining that her injuries were due to an unfortunate medical result.  We reverse.

Background.  We summarize the facts set forth in the plaintiff's expert affidavit (and the supporting materials contained in the offer of proof) in the light most favorable to her, reserving certain facts for later discussion.[2]  See Rahilly v. North Adams Regional Hosp., 36 Mass. App. Ct. 714, 715-717 (1994).  Owens sought treatment at the hospital in March of 2019 due to hip pain and underwent hip replacement surgery without incident on May 8, 2019.  The surgery was completed by 12 P.M. At 3:10 P.M., Owens met with physical therapist O'Hara, who evaluated Owens's physical limitations and physical therapy needs.  The expert summarized O'Hara's recommendations that Owens:

> "required one-person guard assistance (one or two hands on the body to help steady the body), a rolling walker, a bed rail, and verbal cues for hand placement for sit-to-stand [and] stand-to-sit transfers.  [Owens] was assessed with impaired right hip range of motion, reduced right leg strength, and pain resulting in 'balance impairments and gait deviations.'  Her functional limitations included impaired ability to perform sit-to-stand, bed-to-chair, and supine-to-sit [and] sit to supine transfers, impaired ambulation, and impaired ability to walk up [and] down stairs.  She was at risk of falls and required anterior hip

---

[2] The offer of proof consisted of Owens's medical records and reports, affidavits from Owens and her husband, and an expert affidavit from Georgia Persky, Ph.D., M.B.A., R.N., N.E.A.-B.C., C.N.O.R., C.L.N.C., C.N.A.A.  The medical records support the factual summary contained in the expert affidavit.  The defendants challenge the sufficiency of the medical opinion, not the accuracy of the underlying facts leading up to the fall.

precautions and gait training.  She was weightbearing on the right leg as tolerated and was allowed to engage in activity as tolerated."

The note was placed in the patient flow sheets and record between 5:01 P.M. and 5:10 P.M.

Defendant Erazo also checked on Owens several times that day, and recorded a Morse Fall Risk score of 35 (low) at 1:29 P.M. and a score of 45 (low) at 4 P.M.  She noted that Owens was using a walker, required minimal assistance, and could engage in activity as tolerated.

At about 7 P.M., Owens requested assistance in getting out of bed and going to the bathroom.  The nurse on duty called for the P.C.A. to assist Owens.  As Owens got out of bed, she slipped, fell, and reinjured her right hip.  As summarized by Owens's expert, based on the medical records submitted, the fall occurred because P.C.A. Agustin:

> "unhooked an IV from a port in Ms. Owens's left arm and put a walker next to her bed.  Ms. Owens sat up and began to pull herself up, holding onto the walker.  Mr. Agustin was not using a guard belt, holding the walker, or touching Ms. Owens to brace her.  As Ms. Owens stood up, her feet slipped on the wet floor.  The floor was wet because the IV had leaked after being unhooked."

Owens's husband observed liquid on the floor and overheard the head nurse ask who had unhooked the IV bag.  Another nurse

3

described the IV as "leaking."[3]  A thirty-day report submitted by the hospital to the Department of Public Health described the injury as "likely preventable."[4]

Even after the fall, the assessments of Owens's fall risk varied greatly.  P.C.A. Agustin continued to say that Owens required "minimal assistance" at 8:17 P.M. and 9:13 P.M. on May 8.  One nurse made the same notation at 12:17 A.M. on the 9th, two hours after a different nurse assessed Owens's Morse Fall Risk as 85 (high).  A third rated the risk as 60 (high) at 1:03 A.M. on the 9th.

Owens fractured her hip in the fall and underwent revision surgery on May 10, 2019.  She filed her medical malpractice complaint in May of 2020.  As previously noted, the parties' dispute at the tribunal focused solely on the liability of Erazo and O'Hara.

With respect to defendant Erazo, the expert opined that Erazo was responsible for "for ensuring that Mr. Agustin was not allowed to manipulate or disconnect any intravenous tubing due to his lack of adequate qualifications."  The expert stated that Erazo improperly assessed Owens's Morse Fall Risk as low (35-

---

[3] There were also notations in the record that suggested that the IV bag was leaking before it was disconnected.  This factual dispute is not susceptible to resolution by the tribunal.
[4] The hospital did not disclose the condition of the wet floor in its report sent to the Department of Public Health.

45), when it should have been high (60 or greater).[5] She further opined that Erazo, as the nurse on duty, was "responsible and accountable for supervising the co-defendant Ron Agustin, P.C.A., and reviewing and communicating to him physical therapy recommendations concerning the requisite level of assistance with mobility."

With respect to O'Hara, the expert opined that, "as the physical therapist of record, [she] was responsible and accountable for managing Ms. Owens's mobility and risk of falls, which included assessing, communicating to, and coordinating with her nursing staff the requisite level of assistance with sit-to-stand transfers."

Similarly, the expert opined that Erazo, O'Hara, the P.C.A., and the hospital all "failed to properly assess, properly communicate within Ms. Owens's healthcare team, and properly manage her risk of falls as evidenced by the fact that

---

[5] The expert considered all of the defendants (including the P.C.A. and the hospital) culpable for underestimating Owens's fall risk, stating:

> "Ms. Owens was at high risk of falls, with a Morse Fall Risk score greater than 60, in light of her IV therapy, postoperative 'balance impairments and gait deviations' . . . her Oxycodone and other pain medication use for postoperative pain, her marked decline in function preoperatively, her secondary diagnoses of bilateral knee osteoarthritis, interstitial lung disease, and hypertension, and her prior fall on January 24, 2019."

5

the level of assistance provided by Mr. Agustin at the time of Ms. Owens's fall . . . fail[ed] to comply with the contact guard or minimal level of assistance with sit-to-stand transfers designated as the requisite level of assistance" in O'Hara's assessment and treatment plan.  The expert concluded that the defendants deviated from the standards of care by failing to "properly assess Ms. Owens's high risk of falls," failing to properly communicate within her healthcare team the high risk of falls, and failing to "properly coordinate within her healthcare team the proper level of assistance for sit-to stand-transfers."

Discussion.  A medical malpractice tribunal is charged with determining whether the plaintiff's offer of proof "if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." G. L. c. 231, § 60B.[6]  "A plaintiff's offer of proof shall prevail before a medical malpractice tribunal (1) if the defendant is a health care provider as defined in G. L. c. 231, § 60B, . . . '(2) if there is evidence that the [health care provider's] performance did not conform to good medical

_____

[6] Under G. L. c. 231, § 60B, "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice law in the commonwealth."

6

practice, and (3) if damage resulted therefrom.'"  Feliciano v. Attanucci, 95 Mass. App. Ct. 34, 37 (2019), quoting Kapp v. Ballantine, 380 Mass. 186, 193 (1980).  Here, "[w]e deal . . . only with the question whether the offer of proof sufficiently established the existence of 'evidence' that the [two] defendants did not conform to good medical practice."  Booth v. Silva, 36 Mass. App. Ct. 16, 20 (1994).

The defendants assert that the tribunal decision was correct because the expert opinion was based on speculation and conjecture; specifically, that Erazo did not properly assess risk or communicate with P.C.A. Agustin, and that O'Hara did not communicate with Agustin.  This argument misperceives the standard of review of the tribunal.

"[T]he plaintiff's offer of proof raises a legitimate question of liability appropriate for judicial inquiry if 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.'"  St. Germain v. Pfeifer, 418 Mass. 511, 516 (1994), quoting Dobos v. Driscoll, 404 Mass. 634, 656, cert. denied 493 U.S. 850 (1989).  See Lambley v. Kameny, 43 Mass. App. Ct. 277, 286 (1997).  "[A]n offer of proof is to be given an indulgent reading in favor of the plaintiff. . . . [T]he standard for considering expert testimony is an extremely lenient one, and

7

. . . the evidence, including all permissible inferences therefrom, is to be taken in the light most favorable to the plaintiff" (quotations and citations omitted).  Id.[7]

Given this "lenient" standard of proof at the tribunal stage, the defendants' call for greater specificity is misplaced.  "[T]he offer of proof before the tribunal is made without the benefit of discovery," and it therefore "need only be sufficient to raise a legitimate question of liability, with proper evidentiary substantiation to follow."  Feliciano, 95 Mass. App. Ct. at 38.  The level and substance of communication within Owens's health care team is in the hands of the defendants; Owens cannot be faulted for failing to produce it.

Moreover, the evidence before the tribunal indicated varying and disparate views of Owens's fall risk, even after her fall, suggesting (as the expert opined) a lack of coordination and consistency.  The medical records disclose that she was using a wheelchair before her surgery and had other medical conditions.  It is a fair inference, viewing the proffer in the

_____

[7] The defendants also assert that the expert opinion fails to identify the professional standards upon which it is based.  We read the expert affidavit to imply a standard of care.  While the defendants' objections may or may not be an appropriate basis for a pretrial challenge to (or cross examination of) the expert in discovery, at the tribunal stage "a factually based statement by a qualified expert, without more, is sufficient to meet the tribunal standard."  Feliciano, 95 Mass. App. Ct. at 39, quoting Booth, 36 Mass. App. Ct. at 21.

8

light most favorable to Owens, that one or more professionals underestimated the fall risk, or failed to communicate the fall risk to others, most particularly the P.C.A.  It is an equally permissible inference that there was a lack of consistency and communication regarding O'Hara's recommendations regarding transfers.  The P.C.A. left Owens physically unattended, contrary to O'Hara's directives.  While the evidence after discovery may or may not paint a different picture, for purposes of the tribunal, this chain of events, coupled with the expert's opinion, viewed in the light most favorable to the plaintiff, was "sufficient to raise a legitimate question of liability, with proper evidentiary substantiation to follow."  Feliciano, 95 Mass. App. Ct. at 38.  It is not for the tribunal to "examine the weight or credibility of the evidence," Cooper v. Cooper-Ciccarelli, 77 Mass. App. Ct. 86, 91 (2010).

Conclusion.  The findings of the tribunal are to be replaced by the decision of this court that the offer of proof of the plaintiff, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.  The judgment of dismissal as to the

9

defendants Erazo and O'Hara is vacated, and the plaintiff may proceed with her claims.

                              So ordered.

                              By the Court (Green, C.J.,
                                Wolohojian &
                                Sullivan, JJ.[8]),

                              _Joseph F. Stanton_
                              Clerk


Entered:  June 2, 2023.

---

[8] The panelists are listed in order of seniority.