ALICE G. COUGHLIN, individually and as administratrix,
& another[1] *vs.* ALVIN M. BIXON.

Middlesex. November 13, 1986. — March 16, 1987.

Present: PERRETTA, DREBEN, & FINE, JJ.

*Medical Malpractice,* Tribunal. *Negligence,* Medical malpractice, Proximate cause.

In an action by the parents of an infant prematurely born with anatomic abnormalities of the heart, who died eleven days after birth, the plaintiffs' offer of proof to a medical malpractice tribunal presented a legitimate question of liability appropriate for judicial inquiry, where the offer, when considered under the directed verdict standard, made a sufficient showing that the defendant obstetrician's conduct had caused unnecessary damage to the infant's cardiorespiratory systems and had also caused intracranial hemorrhages, exposing him to increased risk of harm and contributing to his death. [643-644]

Failure of plaintiffs' medical experts to employ the words "to a reasonable medical certainty" in expressing their opinions to a medical malpractice tribunal did not render their otherwise firm opinions on the issue of causation insufficient as matter of law. [644-645]

CIVIL ACTION commenced in the Superior Court Department on December 13, 1984.

The case was heard by *Joseph S. Mitchell, Jr., J.,* on a motion to dismiss.

*Charles S. Mancuso (Kevin G. McIntyre* with him) for the plaintiffs.

*Neal M. Lerer* for the defendant.

PERRETTA, J. Matthew J. Coughlin was born on January 25, 1982, with anatomic abnormalities of the heart. He died eleven days later, following surgery. In this action the plaintiffs, Matthew's parents, stated in their offer of proof to the medical malpractice tribunal convened under G. L. c. 231,

---

[1] Paul J. Coughlin.

§ 60B, that the defendant's treatment of the mother during her pregnancy, labor, and delivery was negligent and "proximately caused the loss of any chance of the infant's survival." They also presented the opinions of three medical experts that the defendant's conduct was not in accordance with acceptable medical practice, caused unnecessary damage to Matthew's cardiorespiratory systems, and compromised and interfered with his chances of survival. The tribunal's finding was adverse to the plaintiffs, who did not thereafter post a bond. We conclude that the plaintiffs' offer of proof was sufficient to show: (1) that a doctor-patient relationship existed; (2) that the defendant's performance did not conform to good medical practice; and (3) that the defendant's performance increased the risk of harm to Matthew and probably contributed to his death. With such an offer of proof, this case presents a legitimate question of liability appropriate for judicial inquiry. We vacate the judgment of dismissal.

I. THE NEGLIGENCE.

We relate the facts pertaining to the defendant's conduct as they are described in the plaintiffs' offer of proof. Believing that she was about two months pregnant, the mother sought the defendant's obstetrical services on August 10, 1981. At this visit, the defendant confirmed the mother's pregnancy and advised her of an anticipated delivery date of March 30, 1982. The mother's medical history showed that she was substantially overweight, that she smoked two packs of cigarettes a day, and that she would be over thirty-five years of age at the time of her delivery. According to the plaintiffs' medical experts, these three facts put the mother and her pregnancy "at risk" from the outset.

This risk was intensified by the facts that, during the mother's pregnancy, she failed to gain weight appropriately and, commencing in December through January 22, 1982, she suffered from aches and cramps and experienced numerous episodes of vaginal bleeding and the passing of fluid. She described one such incident, that of January 22d, to the defendant as a "gush of fluid." On January 25th, the mother visited the defendant at his office and again described her ailments to him. He suggested bed rest.

That night (January 25th) the mother went into labor, and she was admitted to Malden Hospital, where she saw and spoke with the defendant. She demanded that he transfer her to a Boston hospital that would be equipped to deal with high-risk pregnancies and premature infants. The defendant either failed or refused to transfer the mother.

When Matthew was born, no pediatrician was present in the delivery room or immediately available. Those physicians who were present were unable to start an "intravenous or to administer bicarbonate" to Matthew immediately upon his birth. Further, the delivery room was not equipped to provide him with oxygen. These crucial ministrations were delayed until Matthew was admitted to the hospital nursery. But even there, the oxygen equipment was ill-suited and insufficient to meet Matthew's needs.

Medical records show that some time on January 26th, Matthew was transferred to Children's Hospital Medical Center. He died eleven days later, following a surgical attempt to correct his anatomic abnormalities of the heart.

Because of the mother's weight, age, and use of tobacco, she and her pregnancy were at risk from the outset. This risk was intensified by her uterine bleeding and passing of fluid. The passing and "gush" of fluid indicated the rupture of fetal membranes.

There is agreement among the plaintiffs' three medical experts[2] that the defendant's performance, in view of the mother's history, complaints, and symptoms, did not conform to acceptable medical standards in the following respects. The defendant failed: (1) to monitor her uterine contractions; (2) to administer tocolytics; (3) to assess quantitatively the severity of the ruptured bag of waters by doing a sonograph to determine the amount of "amniotic fluid in utero"; (4) to hospitalize the mother when the "gush of fluid" during her twenty-eighth week of pregnancy indicated that the fetal membranes had ruptured; (5) to administer antibiotics where a premature rupture of fetal membranes had occurred; (6) to have a pediatrician present in

---

[2] A neonatologist, and two obstetrician-gynecologists.

the delivery room or readily available; (7) to administer cortisone to Matthew to treat his "respiratory distress syndrome"; and (8) to transfer the mother to a hospital better equipped to handle prenatal distress.

II. THE HARM.

As for the consequences of the defendant's conduct, Dr. Kendall wrote: "The first hour of life of a newborn is a critical time and the hours [that] elapsed for . . . [Matthew] to be admitted to Children's Medical Center, where he received appropriate respiratory assistance, caused unnecessary damage to the cardio-respiratory systems." Because Matthew did not receive immediate and appropriate care, as should have been arranged by the defendant, Matthew experienced "intracranial hemorrhages." These hemorrhages "certainly compromised the infant and interfered with his chances of survival. Had he been treated appropriately at Malden Hospital or been born in a tertiary care center which was equipped and prepared to treat the acidosis and respiratory distress promptly, the hemorrhagic states could have been prevented."

Doctor Keller stated that the defendant's conduct "reduced the chances of survival for this infant once the course of labor was irrevocable," and "no precise active steps were taken to forestall labor," even though such steps were indicated and action should have been taken. Had the mother been transferred to, and Matthew delivered at, a tertiary care center which was equipped and prepared to meet Matthew's immediate needs, he "would have had greater opportunities to withstand the vicissitudes of life. As a result, this child did not have that opportunity."

In the opinion of Doctor Greenberg, the defendant's conduct "contributed to the birth of a premature infant, which was the cause of the newborn's demise either through 1, prematurity per se (and there were many unheeded premonitory warnings). 2, hastily and improperly performed delivery. 3, failure to arrange for delivery in a Level III Perinatal center. Had the baby been carried to maturity, delivered competently, with the availability of better facilities and more competent perinatal care, the survival of the baby would have been a more assured outcome."

III. PROXIMATE CAUSE.

It has been settled by *Little* v. *Rosenthal,* 376 Mass. 573, 578 (1978), and *Kapp* v. *Ballentine,* 380 Mass. 186, 191 (1980), that in passing upon the sufficiency of a plaintiff's offer of proof, a medical malpractice tribunal is to employ a directed-verdict standard. The tribunal's determination appears on a form which does not provide for explanation of the grounds, *id.* at 193, upon which the offer was deemed insufficient.[3] However, we think it here apparent from the offer of proof and the parties' briefs before us that the only issue on appeal is whether the plaintiffs made a sufficient showing that the defendant's conduct was causally related to Matthew's death.

"A plaintiff need only show 'that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause. *McLaughlin* v. *Berstein,* 356 Mass. 219, 226 (1969).'" *Mullins* v. *Pine Manor College,* 389 Mass. 47, 58 (1983). See also *Woronka* v. *Sewall,* 320 Mass. 362, 365 (1946); *Miles* v. *Edward O. Tabor, M.D., Inc.,* 387 Mass. 783, 787 (1982). We think that the plaintiffs' offer of proof more than adequately shows that the defendant caused unnecessary damage to Matthew's cardiorespiratory systems and also caused his intracranial hemorrhages, thereby exposing him to an increased risk of harm and contributing to his death. See *Samii* v. *Baystate Medical Center, Inc.,* 8 Mass. App. Ct. 911, 912-913 (1979); *Delicata* v. *Bourlesses,* 9 Mass. App. Ct. 713, 719 (1980); *Glicklich* v. *Spievack,* 16 Mass. App. Ct. 488, 495 (1983), therein citing, among other cases, *Hicks* v. *United States,* 368 F.2d 626, 632 (4th Cir. 1966). Compare *Kearns* v. *Ellis,* 18 Mass. App. Ct. 923, 923 (1984). See also Restatement (Second) of Torts § 323 (1965).[4]

---

[3] The form used required that the tribunal signify only whether "there (is) (is not) sufficient evidence to raise a legitimate question of liability appropriate for judicial inquiry." Based upon the evidence thus far recited, there can be no question regarding the sufficiency of the plaintiffs' offer as it relates to the existence of a doctor-patient relationship and professional conduct which did not conform to acceptable medical practice.

[4] Section 323 reads: "One who undertakes, gratuitiously or for consideration, to render services to another which he should recognize as necessary

Pointing to the fact that Matthew was born with anatomic abnormalities of the heart and relying on *Glicklich* v. *Spievack,* 16 Mass. App. Ct. at 493 ("the case is a close one"), the defendant argues that here, unlike in *Spievack,*[5] the plaintiffs made no showing that "to a reasonable medical certainty" (*id.* at 495) the defendant's conduct caused or contributed to Matthew's death or that he probably would have survived but for the defendant's negligence. The defendant demands too much. " 'The plaintiffs are not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that they introduce evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. Restatement (Second) of Torts § 433B, Comment b (1965).' *Carey* v. *General Motors Corp.,* 377 Mass. 736, 740 (1979). *Miles* v. *Tabor,* 387 Mass. 783, 787 (1982). *Zezuski* v. *Jenny Mfg. Co.,* [363 Mass. 324], 328-329 [1973]." *Mullins* v. *Pine Manor College,* 389 Mass. at 58. See also note 5, *supra,* reciting language from *Glicklich* v. *Spievack,* 16 Mass. App. Ct. at 495; *Cusher* v. *Turner,* 22 Mass. App. Ct. 491, 497-498 (1986). And, although in expressing their opinions as to the consequences of the defendant's conduct none of the medical experts used the words "to a reasonable medical certainty," we

for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

[5] In *Spievack,* the plaintiff, suffering from brain cancer, brought suit against her doctors, alleging that they had failed properly to diagnose and treat her breast cancer, which metastasized. Her medical expert testified to the statistical probabilities of her life expectancy had she received proper medical care. The trial judge allowed the defendants' motions for judgment n.o.v. because he concluded that the jury could not rationally determine "what damage was caused by the inevitable course" of the plaintiff's cancer and "rationally assess[ ] damages" between the defendants. *Id.* at 493. In reinstating the jury's verdicts, the court held that the expert's testimony, "that to a reasonable medical certainty the plaintiff would not have had the brain metastasis and would have had a much improved chance of survival or longer life if treatment meeting accepted standards of care had been appropriately initiated," satisfied the plaintiffs' burden of proof on the issue of proximate cause. 16 Mass. App. Ct. at 495.

do not think the absence of this precise terminology renders those otherwise firm opinions on the issue of causation insufficient as matter of law. Reviewing the experts' statements in their entirety and giving the plaintiffs' offer of proof the "permissibly indulgent reading," *Kilmartin* v. *Lowell Gen. Hosp., post* 901, 902 (1986), to which it is entitled, we conclude that the plaintiffs have demonstrated that the defendant's conduct should be subject to judicial inquiry.

Accordingly, we order: (1) that the judgment of dismissal, entered because of the plaintiffs' failure to file a bond, be vacated; (2) that the order entered which requires that the plaintiffs file a bond be vacated; (3) that there be substituted therefor a finding and decision that the plaintiffs' offer of proof, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry; and (4) that the case be remanded to the Superior Court for further proceedings therein.

*So ordered.*