CAROL M. NICKERSON & another[1] *vs.* YHU H. LEE.

No. 95-P-1245.

Suffolk. October 16, 1996. - January 27, 1997.

Present: BROWN, GREENBERG, & LAURENCE, JJ.

*Medical Malpractice,* Tribunal, Expert opinion, Standard of care. *Negligence,* Medical malpractice. *Podiatrist.*

In a medical malpractice claim the plaintiff's expert opinion letter was sufficient to demonstrate that the defendant's failure to diagnose the extent of the plaintiff's diabetic neuropathy fell below the applicable standard of care and it also demonstrated a causal connection between the negligence alleged and the damage suffered by the plaintiff: the offer of proof was sufficient to raise a legitimate question of liability appropriate for judicial inquiry. [109-112]

CIVIL ACTION commenced in the Superior Court Department on August 24, 1993.

The case was heard by *Patrick J. King,* J., on a motion to dismiss.

*Edward Fegreus* for the plaintiffs.

*Leslie M. Tector* for the defendant.

GREENBERG, J. Aggrieved by the final judgment dismissing her medical malpractice claim against the defendant, Dr. Yhu H. Lee, the plaintiff, Carol M. Nickerson, appeals. A medical malpractice tribunal[2] found her offer of proof deficient because a letter from a podiatrist, Dr. Jeffrey R. Coen, did not provide an explicit statement that the defen-

---

[1]Robert J. Nickerson, the plaintiff's husband, brought a claim to recover for his loss of consortium.

[2]General Laws c. 231, § 60B, inserted by St. 1975, c. 362, § 5, provides that the malpractice tribunal, composed of a lawyer, a medical representative, and a judge "shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."

dant departed from the applicable standard of care. The plaintiff's motions for reconsideration and to supplement the offer of proof were denied. We conclude that the plaintiff's offer of proof, if substantiated at trial, is sufficient to raise a legitimate question of liability.

The tribunal, without passing on the weight or credibility of any of the evidence, see *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 468 (1980), could have found the following facts. On August 8, 1990, the plaintiff went to the East Boston Neighborhood Community Health Center (Center),[3] for treatment of a painful foot. When she first consulted with the defendant, a podiatrist, he took a medical history from her in which she mentioned that several weeks before — while she was having her toe nails cut — another podiatrist scraped a piece of skin underneath the third toe of her right foot. She also told the defendant that she was diabetic. Physical examination of her toe revealed that it was red and swollen. The defendant noted that she had "an infected lesion over the tip" and that pus was draining from the toe. He diagnosed the plaintiff's condition as cellulitis, prescribed medication, and instructed her to soak her toe in a quarter strength Betadine solution followed by application of Bacitracin ointment.

The plaintiff continued to receive treatment of the infected toe at the Center from the defendant and other staff members. On August 16, 1990, a wound culture was ordered.[4] On August 29, the defendant's examination revealed that the plaintiff had no drainage from the toe and lacked sensation. The defendant ordered an X-ray of the plaintiff's toe, which the radiologist reported as showing "no radiographic evidence of osteomyelitis but if that is a clinical concern, bone scan is advised."

---

[3]The plaintiff's amended complaint contained counts against Dr. Lee and East Boston Neighborhood Health Center Corporation. A separate medical malpractice tribunal was previously convened as to the Center; that tribunal found the plaintiff's offer of proof sufficient. After the second tribunal found for Dr. Lee, the plaintiff's claim against him was dismissed and a separate and final judgment, pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was entered as to Dr. Lee.

[4]Dr. Lee saw the plaintiff on August 14, 1990. Although she made additional visits to the Center for her toe on August 16, 17, 20, 23, and August 27, 1990, she saw other practitioners and did not see Dr. Lee during those visits.

On October 8, 1990, the plaintiff returned to the Center complaining of a sore on her right lower leg. She was seen by a physician who noted a sore on her right lower leg that was warm to the touch. She then began to receive fairly regular treatment for the wound on her leg. On her final visit to the Center, October 16, 1990, the defendant made a note in the plaintiff's record that the wound on the right lower leg had decreased substantially and that it appeared as a superficial ulceration with no cellulitis and no lymphangitis. Notes from an earlier office visit on October 11 made by another physician, available to the defendant, suggest that the defendant perhaps ought to have been less certain about whether the infection was clearing up.

Less than a month later, the plaintiff was hospitalized at Massachusetts General Hospital with a diagnosis of diabetic septic foot. A button toe amputation of the third toe of her right foot was performed on the day of her admission. She remained in the hospital for seventeen days and was discharged on November 28, 1990.

Now we bear down on matters related to arguments about the tribunal's decision. During the hearing, the judicial member of the panel suggested that the report of the plaintiff's expert medical witness, Dr. Coen, did not recite, "magic words or a sufficient statement of liability, i.e., the failure to conform to the standard of care." Then, he added:

> "I don't mean to be overly formalistic, but that's exactly what this Tribunal is obliged to [do] and the purpose is to see whether the expert has stated enough in an appropriate fashion to get over the rail, so to speak, and without an opinion that the standard of care was not complied with, you don't get over the rail."

In response, the plaintiff's counsel requested the opportunity to submit a supplemental affidavit of Dr. Coen; however, the judge refused this request saying,

> "[Y]ou get one shot at it. You just can't go over it and over it and over it again and it's up to you to make sure that the doctor gets in his report about the magic words and if they aren't there, then there isn't much I,

for one, may do for you or can do or that I believe I'm in power to do, so I think that's that."[5]

Under § 60B of G. L. c. 231, a plaintiff is required to adduce an "offer of proof" that persuades the tribunal "that a legitimate question of liability ha[s] been raised." *Little* v. *Rosenthal,* 376 Mass. 573, 578-579 (1978). The standard governing the tribunal's determination is the same as that applicable to a motion for a directed verdict, *ibid.,* that is, the offer of proof is viewed in a light most favorable to the plaintiff. *Blake* v. *Avedikian,* 412 Mass. 481, 484 (1992), *S.C.,* 424 Mass. 172 (1997). The statute specifies a wide range of possible sources of admissible evidence to determine whether the defendant failed to conform to good medical practice.[6] However, the critical allegations are usually set forth in an opinion letter describing a "failure to conform to good medical practice." *Gugino* v. *Harvard Community Health Plan,* 380 Mass. at 468. See *Kapp* v. *Ballantine,* 380 Mass. 186, 190 n.4 (1980). Cf. *Ward* v. *Levy,* 27 Mass. App. Ct. 1101, 1102 (1989) (plaintiff's offer of proof which did not contain an expert opinion on appropriate dental practice was insufficient).

The only question presented by the plaintiff's appeal is whether the plaintiff's expert opinion letter was sufficient to show that the defendant's failure to diagnose the extent of the plaintiff's diabetic neuropathy fell below the applicable standard of care.

Dr. Coen's opinion letter states that on the plaintiff's visit to the Center on August 8, 1990, she was treated by the defendant. He then notes:

"On this initial visit there was an inadequate past medical history taken and a poor evaluation regarding the status of [the plaintiff's] podiatric physical exam. It

---

[5]In light of our decision, we need not reach the question whether the tribunal judge erred in refusing to allow the submission of a supplemental affidavit.

[6]"Admissible evidence shall include, but not be limited to, hospital and medical records, nurses' notes, x-rays and other records kept in the usual course of the practice of the health care provider, . . . statements of fact or opinion on a subject contained in a published treatise, periodical, book or pamphlet or statements by experts without the necessity of such experts appearing at said hearing." G. L. c. 231, § 60B, as inserted by St. 1975, c. 362, § 5.

was noted that there was pus on physical exam yet no culture was taken and no X-ray was taken at this point. . . . No CBC was taken. [The plaintiff's] blood sugar was not evaluated even though she was noted to be diabetic and was diagnosed with an infected toe. Podiatric physical exam neglected to evaluate her neurological status which much later was documented to be significantly neuropathic. Consequently the severity of the infection, in this patient, had been underestimated."

The defendant asserts that Dr. Coen's letter did not state that the defendant failed to adhere to accepted medical practice or establish a reference point by which to evaluate the defendant's performance. We do not agree. Parts of Dr. Coen's letter which are reproduced in the margin, show that the defendant's conservative treatment of the plaintiff's infected toe, in light of her diabetic condition, fell below the applicable standard of care.[7]

In *Bradford* v. *Baystate Medical Center*, 415 Mass. 202

---

[7]In regard to the treatment rendered by the defendant on August 10, 1990, Dr. Coen opined:

"[O]n August 10, 1990, [the plaintiff] was seen again at which time it was deemed necessary to surgically debride the infected toe under local anesthesia. This must have been a significantly infected toe to require local anesthesia in a neuropathic patient. I question why two days elapsed before the debridement was performed. Still, no culture and sensitivity, or blood sugar was taken."

In regard to the defendant's treatment of the plaintiff on August 29, 1990, Dr. Coen opined:

"It is clear this patient has a documented slow healing ulceration with three weeks of uncultured drainage, a history of peripheral vascular disease and diabetes with an unknown blood sugar and is in general poor health. This is enough clinical concern so that a bone scan should have been taken."

Dr. Coen's report went on to state:

"In summary, it appears that the severity of [the plaintiff's] infected toe was underestimated. She is a neuropathic diabetic with severe peripheral vascular disease and her infection required more aggressive treatment prior to the onset of osteomyelitis. Wound cultures should have been taken especially when a mixed infection is

(1993), the Supreme Judicial Court found that although the opinion letter of the plaintiff's expert did not provide a direct statement on the standard of care, the expert's statements concerning treatment that should have been rendered constituted an "opinion on the course of action that one reasonably exercising the care and skill of an average vascular surgeon should have followed." *Id.* at 207 n.6. This was held sufficient to meet the directed verdict standard on the issue of that doctor's negligence.

We added gloss to the *Bradford* court's formulation in *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. 714, 718 n.6 (1994), holding that a plaintiff's expert need not state his opinion in formulaic terms. Moreover, the tribunal may not refuse to accept an expert's opinion unless the plaintiff's offer of proof is so deficient that as a matter of law it would be improper for any judge to admit it. See *Kapp* v. *Ballantine*, 380 Mass. at 192. The wrongs to which the language of the expert opinion letter speaks implicitly show how the defendant committed a breach of the standard of care owed to his patient. Although one might imagine an unfortunate result in this case, under the *Little* standard, see 376 Mass. at 578, the content of Dr. Coen's letter passes muster.

As a final point, the defendant argues that the plaintiff's offer of proof failed to explain how the plaintiff's injury was caused by the defendant's breach. The defendant contends that Dr. Coen's opinion letter only offers conclusory statements and thereby fails to meet the standard because it fails to produce "evidence" of a causal connection between the negligence of the defendant and the damages suffered by the plaintiff.

The burden is on the plaintiff to demonstrate "that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause." *Coughlin* v. *Bixon*, 23 Mass. App. Ct. 639, 643 (1987) (citations omitted). As we have observed, Dr. Coen's letter establishes the link necessary

---

likely. Initially, at least a blood sugar, X-ray and CBC should have been taken. If a thorough evaluation and appropriate treatment was rendered immediately, then it is very likely the septic foot and consequent amputation could have been avoided."

between the conduct of the defendant and the plaintiff's injury. He specifically notes that as a consequence of the defendant's failure to evaluate properly the plaintiff's presenting condition, the "severity of the [infection]" was "underestimated." He further opines that had "a thorough evaluation and appropriate treatment [been] rendered immediately, then it is very likely the septic foot and consequent amputation could have been avoided." Thus, the report offers more than just a conclusory statement and, under a directed verdict standard, adequately addresses the issue of causal relationship. *Blood* v. *Lea*, 403 Mass. 430, 434 (1988). See also *Cusher* v. *Turner*, 22 Mass. App. Ct. 491, 498 (1986).

The judgment dismissing the plaintiff's claim against the defendant is vacated. The matter is remanded to the Superior Court where the tribunal's decision is to be struck and in substitution therefor, a determination shall be entered that the offer of proof by the plaintiff is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*So ordered.*