Nickerson, J.
This is an action pursuant to G.L.c. 40A, §17 whereby the Plaintiff seeks to overturn the decision of the Truro Board of Appeals which affirmed the local building commissioner’s issuance of a stop work order against the Plaintiff. While the case was filed in the Land Court it was transferred to Barnstable Superior Court for trial per the Order of the Chief Justice for Administration and Management. The parties appeared for trial on June 16,2004 and submitted the case on an agreed Statement of Facts together with fifty-six exhibits. The agreed Statement of Facts is not comprehensive in nature. This jurist has had to study the voluminous and sometimes contradictoiy exhibits and determine their credibility and relative weight to arrive at the following findings of fact.
FINDINGS OF FACT
The Plaintiff is a corporation which owns the White Sands Beach Club, a motel located at 706 Shore Road (Route 6A) in Truro. Our Plaintiff acquired the premises in 1990 (ex. 17). Previously the motel was known as the Buccaneer Motor Inn. The corporate Plaintiff is managed and apparently owned by Argirios Kuliopulos and his wife Maria Kuliopulos.
The premises, less than three acres in size, is triangular in shape, with considerable frontage on the highway and lot lines which taper back toward a point at or near Cape Cod Bay. In the northwest comer of the tract there is a freestanding building of about 3000 square feet which houses the motel’s coffee shop, office, ice room, manager’s living quarters and an apartment (ex. 11). The motel rooms are arranged around a courtyard in two long buildings, one along the east boundary and one that runs along the west property line and across the southerly tip of the parcel (ex. 6).
Prior to 1987, the motel conformed to the requirements of the Truro zoning by-laws. Effective January 1, 1987, new density regulations took effect whereby 2100 square feet of lot area was required for each motel unit on a given parcel. From 1987 onward, the White Sands was entitled to forty-seven motel units as a matter of right.
Prior to 1985, the White Sands, then The Buccaneer, was operated in common with an adjacent motel, The Blue Sea (ex. 1). At that time there existed in the west building of The Buccaneer, a motel room designated as Unit 21 which was available for rent by tourists. In May 1985, the White Sands was sold to Edward F. Simpson as Trustee of the Boston Financial Trust (ex. 3). Simpson promptly sought to convert the hotel into condominium units. To do so, Simpson not only had to comply with the state condominium enabling statute but also had to secure a special permit from the Truro Board of Appeals per the local zoning code. The special permit was approved in October 1985 (ex. 5).
The condominium documents created at Simpson’s behest are the most reliable source for determining what existed on the ground at the White Sands immediately prior to the change in the zoning by-laws’ density regulations. In addition to the master deed[1] (ex. 12) there is a set of six plans showing in detail the layout of the motel rooms as of February 1986 (ex. 6-11). The plans bear the attestation of a registered land surveyor. The plans depict a total of fifty motel rooms available for rent to travelers. By all accounts, there was never a Unit 13, triskidekaphobia at work no doubt.
Comparing the old plans (ex. 1 & 2) with the 1986 plans (ex. 7) shows a significant change as to Unit 21. As of February 1986, Unit 21 had been converted from a usable motel room into a utility room housing a furnace and a storage room. The 1986 plan refers to the storage area as a common area. Unit 21 is not referenced in the master deed as a separate condominium unit. As of January 1, 1987, there was no motel room in the space previously allocated to Room 21.
The 1986 plan, (sheet 6, ex. 11) depicts the office building. The plan is subtitled “Unit 51 containing main house, apartment, coffee shop” and like all the 1986 plans, bears the surveyor’s attestation as to the plan depicting the structure “as built.” As of January 1, 1987, the office building contained two distinct living spaces: the manager’s quarters and a separate apartment. Together they are referred to as Unit 51 and constitute a single condominium unit.
Based on all the credible evidence, this Court finds that on the eve of the change in the zoning density-regulations the White Sands consisted of fifty motel units available to travelers, the manager’s quarters and one apartment. For the purpose of condominium ownership, the premises had fifty-one distinct units. For the purpose of zoning the premises had fifty motel units, the manager’s quarters and one apartment, i.e., a total of fifty-two distinct habitable spaces.
*622 Simpson never sold individual condominium units. He operated the entire property as a motel until his mortgage was foreclosed upon in 1990 (ex. 15 & 16). Our Plaintiff took title to the entire premises by foreclosure deed (ex. 17). To date, none of the condominium units have been deeded out. Nonetheless the condominium deed has not been extinguished.
Sometime after January 1, 1987, the portion of the former Unit 21 which is shown on the 1986 plans as common area was converted into living space (ex. 50). The resurrection of room 21 was not in the best interest of Simpson to the extent he was actually trying to market the premises as condominiums. One can safely infer that Unit 21 was not returned to use as living quarters until well after the 1987 zoning density regulations took effect. While the Court lacks direct evidence on this point, most probably the renewed Unit 21 was the handiwork of the Kuliopuloses.
Early in 1996, White Sands petitioned the Board of Appeals for a special permit to expand the motel. The application called for alterations to three existing rooms, to enlarge the rooms to meet safety standards (ex. 20). The application also sought to construct a new Unit 21, apparently in the gap between the east and west buildings thereby rounding out the horseshoe of motel rooms around the courtyard (ex. 20).[2] The creation of the new Unit 21 was expressedly premised on the applicant abandoning the use of the revived Unit 21. Further the applicant promised that the new Unit 21 and the renovated Unit 28 would be handicap accessible. Throughout the course of the special permit hearings and board discussions White Sands represented that the revived Unit 21 had always been used as a motel room. The Board of Appeals accepted the representation and granted the special permit with the expressed understanding that by doing so the Board was not increasing the number of motel rooms allowed under the zoning law (ex. 22).
Work on the new Unit 21 was not promptly executed. About two years after the granting of the special permit the building inspector issued a stop work order on the project (ex. 30). The Februaiy 1998 stop work order was based on the inspector’s tour of the site. He found the revived Unit 21 was still in use as a motel room (albeit smaller than the original Unit 21) and in his opinion was too small under the terms of the building code. More to the point, the inspector determined that the revived Unit 21 was not in use as a motel room when the zoning density regulations changed in 1987 and therefore the swop intended under the 1996 special permit in fact was not a swop but an increase in the total number of motel rooms and thus an increase in the nonconforming nature of the use.
White Sands appealed the stop work order to the Board. At the outset the Board voted 3 to 2 to lift the stop work order provided certain conditions were met (ex. 34). This vote was insufficient to overturn the inspector’s decision under the supermajority requirement of G.L.c. 40A, §15, hence White Sands entered into its present action in the Land Court. The Land Court case was transferred to Barnstable Superior Court to be heard with two related Superior Court actions. The stop work order case was remanded to the Board per the agreement of the parties. On remand on J anuaty 15,2002, the Board voted 5 to 0 to uphold the building inspector. The case returned to the Superior Court.
APPLICATION OF THE FACTS TO THE CASE
When Truro enacted new density regulations in the zoning by-laws in 1987, the White Sands Beach Club became a lawful nonconforming use to the extent that it had more than forty-seven habitable units on site. The fifty motel units, the manager’s quarters and the apartment in the office building all became grandfathered under the zoning act, G.L.c. 40A, §6 and the local by-law. Old Unit 21 did not enjoy such status as it was not in use at the close of 1986. Old Unit 21 had been previously abandoned as a motel room for zoning purposes. Truro Zoning By-Law §11; Bartlett v. Board of Appeals of Lakeville, 23 Mass.App.Ct. 644, 669 (1987). The outcome in this case is governed by the facts found as to the number and nature of the habitable units in existence on December 31, 1986. The number of motel units licensed by the Board of Health annually, while arguably having some evidentiary value, does not control the case. See Tamerlane Realty Trust v. Board of Appeals of Provincetown, 23 Mass.App.Ct. 450, 454-55 (1987). Likewise, the Board of Health’s regulation requiring an on site manager does not determine this zoning dispute.
The Board of Appeals had the inherent authority to revoke the special permit granted in 1996. The record is clear that the permit was granted only on the assumption, fostered by White Sands, that the revived Unit 21 was a lawful nonconforming use. While it appears the Kuliopuloses committed a fraud on the Board, even if the Board and the applicant acted on a mutual mistake of fact the result would be the same, i.e. the Board could act to correct the mistake. See Covell v. Department of Social Services, 42 Mass.App.Ct. 427, 433 (1997); Stowe v. Bologna, 32 Mass.App.Ct. 612, 615 (1992); Aronson v. Brookline Rent Control Board, 19 Mass.App.Ct. 700, 705 (1985); also see Ferrante v. Board of Appeals of Northhampton, 345 Mass. 158, 162-63 (1962). Moreover, this Court can act to ensure justice is done.

ORDER

For the above-stated reasons it is ORDERED that judgment enter AFFIRMING the decision of the Board of Appeals dated January 15,2002 and the stop work order of the Building Inspector dated Februaiy 27, 1998.

The master deed contains errors in that Unit 34 is not listed on exhibit C attached to the master deed and Unit 27 is not listed on exhibit B attached thereto. Both units appear on the plans (ex. 7 & 9).

The application and associated plans were not marked as an exhibit.