JAMES BAILEY & another[1] *vs.* CATALDO AMBULANCE SERVICE,
INC., & another.[2]

No. 04-P-393.

Middlesex. April 5, 2005. - August 10, 2005.

Present: LAURENCE, KAFKER, & MILLS, JJ.

*Negligence,* Proximate cause, Expert opinion. *Evidence,* Expert opinion,
Medical record. *Witness,* Expert. *Proximate Cause. Statute,* Construction.

In a personal injury action, the judge did not err in ruling that the plaintiffs'
evidence on the issue of causation, which consisted of the opinions of
treating physicians in the form of medical records introduced under G. L.
c. 233, § 79G, contained sufficient medical opinion to permit the jury's
finding in the plaintiffs' favor, notwithstanding the lack of a live expert
witness. [232-237]

CIVIL ACTION commenced in the Superior Court Department on
October 24, 2000.

The case was tried before *R. Malcolm Graham,* J., and a mo-
tion for a new trial was considered by him.

*Samuel L. Parkman* for the plaintiffs.

*Matthew W. Perkins* for the defendants.

MILLS, J. On December 10, 1997, an ambulance owned by the
defendant, Cataldo Ambulance Service, Inc., and driven by the
defendant, Jeffrey Betterini, struck a stopped vehicle in which
the plaintiffs, James and Dorothy Bailey, were seated. At the
eventual trial on their personal injury complaint, the Baileys
submitted medical bills and records certified pursuant to G. L.
c. 233, § 79G, and each testified to the circumstances of the
incident, the course of Mrs. Bailey's medical treatment, her
resulting pain and discomfort, and the losses they both sustained
during the approximately four years since the accident. They

[1] Dorothy Bailey.

[2] Jeffrey Betterini.

did not present a medical expert witness to testify that the injuries claimed by Mrs. Bailey were, "with a reasonable degree of medical certainty," a consequence of the defendants' negligence. The judge ruled that the plaintiffs' evidence was sufficient, notwithstanding the lack of a live expert witness. The defendants appeal, and we affirm.

1. *The evidence.* Mr. Bailey was driving and had stopped at a red light. The ambulance struck the Bailey vehicle and pushed it into a truck that was in front of them.[3] Upon impact, Mrs. Bailey went forward and backward, striking her head twice on the headrest.

On the day of the accident, Mrs. Bailey sought medical treatment at Harvard Vanguard Medical Associates (Harvard Vanguard), her principal healthcare provider.[4] X-rays were taken, and she was diagnosed with a "whiplash injury with left-sided muscle spasm in her neck" and provided with a neck collar brace, as well as the prescription medications Flexeril and Motrin. She sought further care on December 13, 1997, and was examined for musculoskeletal and low back pain. A magnetic resonance image (MRI) was performed. On December 22, 1997, complaining of considerable pain, as well as pain and paresthesias down her arm and into her thumb, she was seen by her own physician, Dr. Lee Younger, who concluded that she suffered from low back pain and sciatic pain. Mrs. Bailey had a further appointment with Dr. Younger on January 28, 1998, where he noted that there was "still back and neck pain following MVA [motor vehicle accident] 12/10." Dr. Younger referred her to physical therapy, which she undertook, but her symptoms remained, and she further consulted with Dr. Younger on March 4, 1998. Dr. Younger explained to the Baileys that "it was not unusual after whiplash injuries of rather minor nature to have very prolonged symptoms [that] can go on for months or longer." Dr. Younger referred Mrs. Bailey to the neurology department where she was seen on March 11, 1998, by Dr. Andrew Herzog, a neurologist, who diagnosed Mrs. Bailey with "left-sided C-6 and L-5 radiculopathies[,] secondary to whiplash

---

[3]The defendants have stipulated as to liability.

[4]The medical evidence in this and the succeeding full paragraph is taken from Mrs. Bailey's medical records.

injury sustained on 12/10/97." Dr. Herzog prescribed further conservative treatment. He saw Mrs. Bailey again on May 13, 1998, when he noted an improvement of her symptoms and prescribed further medication for the "burning dysesthesia in the scapular region." On July 8, 1998, Dr. Herzog reported that her left shoulder and neck were burning, and prescribed additional medication. Mrs. Bailey continued treatment with Dr. Herzog in October, 1998, and January, 1999. Despite various medications and treatment options, her symptoms persisted. On January 13, 1999, Dr. Herzog noted flare-ups of her symptoms, and concluded that they were "attributable to her accident of about 14 months ago." Mrs. Bailey was referred to acupuncture, and to the pain management clinic at her healthcare facility.

On June 20, 2000, Dr. Younger diagnosed Mrs. Bailey with chronic pain syndrome and stated, "Unfortunately her neck, shoulder and back pain have not remitted in spite of the full spectrum of both orthodox and alternative therapies. . . . I told her that nobody really understands why, after a relatively minor injury, people often have years of debilitating pain. I told her to expect this to eventually burn out, but that it could take another two to three years." Dr. Younger noted that her pain had a "neuropathic quality to it." When her pain continued, she returned to see Dr. Younger on March 29, 2001, at which time she was referred to an orthopedic doctor who examined her on May 7, 2001, and noted an impression of "chronic neck pain." Mrs. Bailey attended a neck pain school administered by Harvard Vanguard in June, 2001. She returned to Dr. Herzog in October, 2001, and after further unsuccessful treatment, was referred to Dr. Naila Moghul, a physician in the pain management department at Harvard Vanguard. On May 14, 2002, Dr. Moghul's impression was that "Ms. Bailey suffers from chronic muscle spasm that initially began at the time of the motor vehicle accident in 1997 . . . ." Dr. Moghul changed Mrs. Bailey's regimen and referred her for further physical therapy and massage therapy. At the physical therapy evaluation on June 25, 2002, Mrs. Bailey was "found to have signs and symptoms consistent with chronic neck and upper back pain with some weakness." By October, 2002, the regimen that Mrs. Bailey was following, along with the medication prescribed by

Dr. Moghul, had helped to alleviate, although not eliminate, Mrs. Bailey's symptoms. At the time of trial, Mrs. Bailey continued to have ongoing pain, but was able to better manage that pain.

In addition to medical records that contained the evidence in the preceding two paragraphs, Mrs. Bailey testified to her various medical treatments and consultations as well as her use of several varieties of pain medications and muscle relaxants. She testified to her good health prior to the accident, and freedom from the painful symptoms that she later experienced constantly from the date of the accident to the time of trial. She testified to regular gym activities (including aerobic exercise) several times a week, with her husband, prior to the accident, and her total inability to continue those activities afterwards. She also testified to other limitations after the accident, including physical play activities with her grandchildren, intimate relations with her husband, and driving herself to work. In addition, she experienced lack of sleep, crying at night, restraints on mobility (including housework), an inability to lift, and constant pain. Mr. Bailey's testimony mirrored, to a slightly lesser degree, the testimony of his wife.

The defendants presented Dr. Robert Pennell, a board certified orthopedist, who had examined Mrs. Bailey in February, 1999. He testified to his examination of her medical records, her history as she had recited to him, his training and experience, his physical examination of her, and his conclusions. Among his conclusions was that Mrs. Bailey was consciously or deliberately manipulating results of the examination, feigning her symptoms and their importance. He testified that her recitation of pain and symptoms "did not make sense from a physiologic[al] standpoint. From a logical orthopedic or neurologic sense, it did not make sense." He testified to his opinion that as of one and one-half years from the time of her accident the consequences had "resolved . . . disappeared. She was cured, nothing left from it." He testified that "based on the examinations that [he had] conducted and based on [his] review of all the medical records [as of February, 1999], [he formed] an opinion . . . [that] any injuries [Mrs. Bailey] might have received in [the] accident had been resolved." He testified "[t]hat she made a full recovery from any possible injury she might have suffered in the accident of December 10, 1997."

2. *Discussion.* Prior to the commencement of trial, at the close of the plaintiffs' evidence, and during the charge conference, the defendants argued that the plaintiffs could not produce sufficient evidence of causation without a live medical expert testifying. Prior to trial the defendants argued that a treating physician's opinion of causation, even if contained in the medical records introduced under G. L. c. 233, § 79G, was insufficient without a live witness testifying, "to a reasonable degree of medical certainty," that Mrs. Bailey suffers the condition explicitly complained of, and that the condition is caused by the defendants' negligent action. At the close of the plaintiffs' case, the defendants, arguing in support of their motion for directed verdict, acknowledged that G. L. c. 233, § 79G, allows medical records to be admitted (as they were in this case), but asserted that there is nonetheless a requirement of live testimony from a medical expert "to a reasonable degree of medical certainty" that there is a relationship between the defendants' actions and Mrs. Bailey's medical condition. The defendants claim that the medical records here do not contain the necessary opinion, in any case. During the charge conference, the defendants' attorney reiterated that the causal connection between negligence and the injury must be the subject of testimony by "a medical expert who comes in here and says to a reasonable degree of medical certainty these damages or these injuries that this person is claiming are connected to this accident."

The judge instructed, in part:

> "Even if you find that the defendants were negligent, they are not liable to the plaintiff unless their negligence caused the plaintiff's injuries.

> "To meet this burden, the plaintiff need only show that there is a greater likelihood or probability that the harm complained of was due to causes for which the defendants were responsible than from any other cause.

> ". . .

> "[T]he plaintiff is not required to show the exact cause of her injuries or to exclude all possibility that they resulted without the fault of the defendants. What the

plaintiff must show by expert testimony presented here in court either live or through medical records is that the harm was more likely due to the defendants' negligence than to some other cause."

The judge appears to have decided that some quality of expert opinion testimony was necessary in this case on the issue of causation; that the opinion was expressed in Mrs. Bailey's medical records, without the necessity of a live witness or the words "to a reasonable degree of medical certainty"; and that the records in this case contained sufficient medical opinion to permit the jury to make a plaintiffs' finding. We agree with the judge.

The defendants first argue that there are no appellate decisions declaring whether an expert opinion on causation may be proved through a § 79G submission, without a live witness, and that the live witness should be required. The defendants rely upon *Ortiz* v. *Stein*, 31 Mass. App. Ct. 643 (1991); *Gompers* v. *Finnell*, 35 Mass App. Ct. 91 (1993); and *Lally* v. *Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. 317 (1998). However, we do not find these cases to support their argument. The theory of causation in *Lally* is more complicated than in the present case. In *Lally*, the plaintiffs sought to prove that a child's spinal injury during a traffic accident was exacerbated by a design defect in the automobile in which he was riding. *Lally* v. *Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. at 322. Proof of exacerbation or aggravation of injuries is more likely to require expert testimony. See *id.* at 324-325.

Moreover, unlike the present case, in *Lally*, "all the medical testimony, including that of the plaintiffs' own expert, tended to *refute the plaintiffs' theory* of causation" (emphasis supplied). *Id.* at 322. Thus, the court's conclusion that "a single, reluctant acknowledgment [by the expert] cannot be construed as his expert opinion, to a reasonable degree of medical certainty, that [the] injury was caused by an impact with a narrow, rigid edge such as the glove box door," see *id.* at 323-324, has little bearing on the issues in the present case, where the plaintiffs submitted numerous physicians' statements in the medical records supporting their theory of causation.

The defendants' reliance on *Ortiz* v. *Stein, supra,* and *Gom-*

*pers* v. *Finnell, supra,* is similarly misplaced. Those cases stand for the proposition that expert opinion in medical records admitted pursuant to G. L. c. 233, § 79G, must be made by a physician who examined or treated the patient. *Ortiz* v. *Stein*, 31 Mass. App. Ct. at 646 (statute is "inapplicable to the report of a physician who neither examined nor treated the plaintiff"). *Gompers* v. *Finnell*, 35 Mass. App. Ct. at 93 ("Nothing in [the statute] authorizes *one not a physician or dentist* to offer an expert opinion that a patient's physical symptoms resulted from a particular accident or incident" [emphasis supplied]). In the instant case there is no dispute that the evidence in the medical records pertaining to the plaintiff's injuries came from the doctors who treated her.

Section 79G of chapter 233 provides that authenticated bills, reports, and records "shall be admissible as evidence of the fair and reasonable charge for such services [to a person injured] or the necessity of such services or treatments, the diagnosis of said physician . . . , the prognosis of such physician . . . , *the opinion of such physician . . . as to proximate cause of the condition so diagnosed,* [and] the opinion of such physician . . . as to disability or incapacity, if any, proximately resulting from the condition so diagnosed . . ." (emphasis supplied). The statute also provides that "[n]othing contained in this section shall be construed to limit the right of any party to the action to summon, at his own expense, such physician . . . or agent of such hospital or health maintenance organization or the records of such hospital or health maintenance organization for the purpose of cross examination with respect to such bill, record and report or to rebut the contents thereof, or for any other purpose, nor to limit the right of any party to the action or proceeding to summon any other person to testify in respect to such bill, record or report or for any other purpose." *Ibid.*

In this case the defendants did not claim that the records were improperly admitted; rather, they claimed that the records did not contain a reliable expert opinion as to causation and that it was the plaintiffs' burden to produce a live expert as part of their proof. We do not read the statute or the cases cited by the defendants as requiring a live witness. To the extent the defendants complain that none of the treating physicians identi-

fied in the records was available for live cross-examination, the responsibility for calling them as witnesses lies with the defendants. The statute clearly allowed the defendants to summon treating physicians for live testimony.

The defendants next argue that an expert medical opinion in this case must include the formulaic phrase "reasonable degree of medical certainty." The defendants provide no Massachusetts case authority, however, identifying the specified language as requisite to an expert opinion on causation. While the court in *Lally* v. *Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. at 324-325, spoke explicitly about the necessity for expert medical testimony on highly technical medical issues, such as injury causation and enhancement of injury to the spine resulting in paraplegia, neither the *Lally* opinion nor the cases cited there indicate a requirement that an expert, assuming that an expert is necessary, must use the identified words. In fact, we have determined in the medical malpractice context that an expert's recitation of "magic words" is not required, so long as the expert's opinion is expressed with sufficient firmness and clarity. See *Coughlin* v. *Bixon*, 23 Mass. App. Ct. 639, 644-645 (1987) ("although in expressing their opinions as to the consequences of the defendant's conduct none of the medical experts used the words 'to a reasonable medical certainty,' we do not think the absence of this precise terminology renders those otherwise firm opinions on the issue of causation insufficient as matter of law"); *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. 714, 718 n.6 (1994) (holding that plaintiff's expert need not state his opinion in formulaic terms); *Nickerson* v. *Lee*, 42 Mass. App. Ct. 106, 111 (1997) (same); *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 287 (1997) ("It was not required of [the expert] to state his opinion as to [the defendant's] perceived deficiencies in any particular form or by use of any magic words").

Finally, the defendants argue that the medical records submitted in this case did not contain sufficient medical opinion to permit the jury to make a plaintiffs' finding. Persistently, the defendants focus their argument on the language "reasonable degree of medical certainty." They highlight the language of treating physicians as contained in the records. They note that

Dr. Younger's June 22, 2001, medical record states that the accident "presumably set . . . off [the chronic pain syndrome]" and Dr. Moghul's May 14, 2002, statement that she "feel[s that] Mrs. Bailey suffers from chronic muscle spasm that initially began at the time of the motor vehicle accident in 1997 and subsequently grew in intensity to involve her entire upper back."[5] The defendants note Dr. Herzog's *impression*, on March 11, 1998, that "Ms. Bailey has left-sided C-6 and L-5 radiculopathies secondary to whiplash injury sustained on 12/10/97." They note Dr. Moghul's May 14, 2002, *impression* that "Ms. Bailey suffers from chronic muscle spasm that initially began at the time of the motor vehicle accident in 1997 . . . ." These statements by Mrs. Bailey's treating physicians are at least as compelling as the live testimony of the expert in *Andrade* v. *Correia*, 358 Mass. 786, 787-788 (1971), which "was sufficient to establish the causal connection between the . . . accident and the plaintiff's disability." There, in response to the judge's questions as to his medical opinion, the expert stated, "I firmly believe that this accident had something to do with her hand." *Ibid.* We hold that the medical records in this case contain sufficient expert opinion on causation to the extent that such expert opinion is required in this case.[6]

[5]The defendants in their brief relax their vehement insistence upon the "reasonable degree" language, suggesting that "other like terms" would suffice for opinion that the accident was a cause of the plaintiff's injury.

[6]We also express our view, by way of dictum, that the injuries complained of by Mrs. Bailey, regardless of denomination, are not so highly technical as to require greater specificity in causation by way of expert opinion. She suffered injuries in an automobile accident, and thereafter experienced chronic pain that she did not have before the accident. Causation is, fairly, a matter of degree, and clearly there are cases involving medical issues where no expert opinion whatsoever would be necessary to establish legal causation. See *Lovely's Case*, 336 Mass. 512, 516 (1957) (no expert testimony required where causal relationship between alleged negligence and claimed injury is within "general human knowledge and experience"); *Haggerty* v. *McCarthy*, 344 Mass. 136, 139 (1962), quoting from *Cyr* v. *Giesen*, 150 Me. 248, 252 (1954) (medical malpractice cases "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge" do not require expert testimony); *Carney* v. *Tranfaglia*, 57 Mass. App. Ct. 664, 666-667 (2003) ("When the causal link is one that may be inferred from the evidence already received, the finder of fact does not need help from an expert").

The judge was correct in denying the motion for directed verdict. The plaintiffs' evidence in this case was sufficient to support the jury's finding.

*Judgment affirmed.*