NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-664

WENDY MENDOZA-RIVERA[1] & others[2]

vs.

DOUGLAS A. ROMNEY & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case concerns claims arising from the death of Barry N. Mendoza (decedent) on April 13, 2020, at St. Luke's Hospital in New Bedford, following a fall he sustained at the hospital the previous day.  The plaintiffs, Wendy Mendoza-Rivera, her two sisters (all daughters of the decedent), and the decedent's wife, appeal from the dismissal of their complaint for failing

---

[1] Individually and as personal representative of the estate of Barry Mendoza.

[2] Marie V. Mendoza, Cheryl A. Arruda, and Mercedes Prohaska.

[3] Tomasz Pajak, Nnamdi Amaechina, Michael Barretti, Amy M. Bracken, Brooke A. Taylor, Casey Parker, Tatyana M. Mosby, Julia G. Pires, Cheryl A. Ellis, Joanne Magpayo, Talia Reis, Lesly Wood, Jane Doe, John Doe, and Southcoast Hospitals Group.

to post a bond after an adverse decision of a medical malpractice tribunal. See G. L. c. 231, § 60B. The plaintiffs claim that the medical malpractice tribunal erred in determining that the offer of proof was insufficient and that the decedent's injuries were due to an unfortunate medical result. We affirm.

Background. 1. Prior proceedings. The plaintiffs commenced this action against the health care system that operates St. Luke's Hospital (Southcoast), five physicians and eleven nurses, contending that the defendants deviated from the standard of care by failing to take appropriate steps to prevent the decedent from falling. Pursuant to G. L. c. 231, § 60B, the Superior Court convened a medical malpractice tribunal. Prior to the hearing, the plaintiffs submitted their offer of proof, consisting of the decedent's medical records and an opinion letter from Dr. Richard M. Dupee, a qualified expert physician.[4]

The tribunal found that the plaintiffs' offer was not sufficient as to each defendant, and that the decedent's death was "merely an unfortunate medical result." When the plaintiffs failed to post the required bond, a judge of the Superior Court dismissed the complaint. This appeal followed.

2. The allegations. "We summarize the evidence in the [plaintiffs'] offer of proof in the light most favorable to the

_____

[4] Dr. Dupee had been a licensed medical doctor for over fifty years and was board certified in internal medicine.

plaintiff[s]."  DosSantos v. Beth Israel Deaconess Hosp.-Milton, Inc., 497 Mass. 34, 35 (2026), quoting Bennett v. Collins, 496 Mass. 737, 738 (2025).

On April 10, 2020, the decedent was admitted to the intensive care unit (ICU) of St. Luke's Hospital after complaining of a cough and shortness of breath.  At the time of his admittance, the decedent was seventy-five years old and diagnosed with a number of serious health conditions.  He was categorized as a fall risk in the ICU and safety measures were put in place.

On April 12, 2020, the decedent was transferred to a general medical unit of St. Luke's Hospital.  Staff in that unit continued to observe the fall risk safety measures implemented in the ICU.  Around 6:55 P.M. that evening, nurses in the unit heard a loud thump, and the decedent was seen falling to the ground in the hallway directly outside of his room.  A computed tomography (CT) scan revealed hemorrhages in the decedent's brain.  The decedent's health proxy had signed a "do not resuscitate" (DNR) instruction on his admittance and maintained those instructions after consulting with a neurosurgeon.  At 1:25 A.M. the next day, the decedent was pronounced dead.

During the entirety of the decedent's stay at St. Luke's Hospital, at least three physicians and ten nurses attended to him; some of these medical professionals encountered him in the

3

ICU and others in the general medical unit. The essence of the plaintiffs' complaint was that the doctors and nurses who cared for the decedent departed from the standard of care by failing to monitor his risk of falling; failing to ensure that the alarm on the bed was functional; and failing to use a device referred to as a TeleSitter, a remote observation system that uses video monitoring to watch a patient designated as a fall risk. The theory of liability against the hospital was respondeat superior.

3. The expert opinion. As part of the offer of proof against all the defendants, the plaintiffs presented the decedent's medical records and an expert opinion report of Dr. Dupee. Dr. Dupee opined that the defendants, whom he collectively referred to as "Southcoast Health" had "failed to recognize and provide care consistent with its own assessments and failed to recognize, despite their own assessments, that [the decedent] was a high risk for falling with injury if he was not provided with adequate surveillance." Dr. Dupee further opined that the decedent's fall was preventable as he should have been more closely monitored and should have had a TeleSitter in place. Dr. Dupee asserted that the "standard of care required the Defendants to exercise the degree of care and skill of the average qualified healthcare provider practicing in their respective specialties, taking into account the advances

4

in the profession and the resources available to them."

Finally, Dr. Dupee concluded that

> "Southcoast Health should have provided care to avoid breaches in provision of reasonable care, but chose instead to breach such standards, and as a result, [the decedent] was caused to suffer a head injury resulting in severe anxiety, loss of function, loss of dignity, loss of quality of life, and an untimely death."

4. <u>Discussion</u>. When a medical malpractice action is brought against a health care provider, a plaintiff is required to "present an offer of proof to a 'tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice law in the commonwealth.'" <u>DosSantos</u>, 497 Mass. at 44, quoting G. L. c. 231, § 60B.[5] The tribunal has the "narrow task" of determining whether the offer of proof "is sufficient to raise a legitimate question of liability appropriate for judicial inquiry" (citations omitted). <u>DosSantos</u>, <u>supra</u>. A plaintiff's offer of proof must establish that (1) the defendant meets the definition of a "health care provider" provided in § 60B, (2) the defendant's performance did not conform to good medical practice, and (3) damage resulted.

---

[5] The Legislature enacted the tribunal screening procedure and bond under G. L. c. 231, § 60B, to "discourage frivolous medical malpractice claims" (citation omitted). <u>Bennett</u>, 496 Mass. at 742. See <u>LaFond</u> v. <u>Casey</u>, 43 Mass. App. Ct. 233, 236 (1997).

5

Bennett, 496 Mass. at 742.  Because the medical malpractice
tribunal occurs in the early stages of litigation, without the
benefit of discovery, the evidence presented in the offer of
proof must be viewed in the light most favorable to the
plaintiff.  DosSantos, supra.

"The statute specifies a wide range of possible sources of
admissible evidence to determine whether the defendant[s] failed
to conform to good medical practice.  However, the critical
allegations are usually set forth in an opinion letter
describing a 'failure to conform to good medical practice'"
(footnote omitted).  Nickerson v. Lee, 42 Mass. App. Ct. 106,
109 (1997), quoting Gugino v. Harvard Community Health Plan, 380
Mass. 464, 468 (1980).  An acceptable offer of proof must
contain more than mere conclusory allegations or statements of
counsel.  Booth v. Silva, 36 Mass. App. Ct. 16, 20 (1994).[6]

For several reasons, the plaintiffs' offer of proof was
insufficient to prevail at the medical malpractice tribunal
stage.  As noted above, the plaintiffs filed suit against the
hospital, a named internist, two named hospitalists, and ten
named nurses working in the ICU and the general surgery floor.
Despite each defendant's distinct role and responsibility to

---

[6] If the tribunal finds for the defendant, the plaintiff's
claim will be dismissed unless a bond is posted.  Bennett, 496
Mass. at 741.

6

provide medical care to the decedent, Dr. Dupee's opinion letter fails to identify the standard of care for any single defendant. In fact, in the discussion portion of his opinion, Dr. Dupee does not mention any specific defendant by name. Rather, when expressing his opinion, Dr. Dupee refers to all defendants simply as "Southcoast Health" or "the Defendants."

The plaintiffs' assertion that the tribunal should not have treated each defendant independently is contrary to our case law. To proceed against the defendants, the plaintiffs needed to submit a sufficient offer of proof as to each of them. Each health care professional "is held to the standard of care and skill of the average member of the medical profession practicing his specialty at the time of the alleged negligence" (quotation, citation, and emphasis omitted). Palandjian v. Foster, 446 Mass. 100, 112 (2006). Here the offer of proof was lacking. For instance, the Dupee opinion letter does not establish the standard of care for a hospitalist treating the decedent in the ICU (where the defendant did not fall) or the standard of care for a nurse tasked with caring for the decedent on the general medical floor. Neither does the Dupee opinion letter provide any evidence as to which defendants were responsible for monitoring the decedent, ordering a TeleSitter, or verifying the functioning of the installed bed alarm.

While the Dupee letter does state that the "Southcoast" defendants breached the standard of care, it describes neither the specific actions (or inactions) of each defendant nor the facts that support Dr. Dupee's opinion that an individual defendant deviated from the applicable standard of care. The plaintiffs concede this but insist that, because the medical malpractice tribunal occurs before discovery has begun, they were not required to provide this information. We are not persuaded.

Recently, in DosSantos, 497 Mass. at 45, the Supreme Judicial Court held that a plaintiff's offer of proof was insufficient because it failed to specifically name the defendants or their professions, failed to articulate the standard of care for each of the defendants in their respective professions, and failed to specify the role each defendant had in that plaintiff's medical care. Here, the plaintiffs' offer of proof suffers from the same infirmities as the offer of proof in DosSantos, supra. Without such information, we are unable to discern how each individual defendant "'failed to adhere to the standard of care and skill of the average member of the profession' practicing in his or her specialty." Id., quoting Bradford v. Baystate Med. Ctr., 415 Mass. 202, 206 (1993). We agree with the conclusion reached by the tribunal that the plaintiffs' offer of proof was insufficient to raise a

8

legitimate question of liability appropriate for judicial inquiry.  Accordingly, the complaint was properly dismissed.[7]

Judgment affirmed.

By the Court (Shin, Walsh & Allen, JJ.[8]),

Clerk

Entered:  March 25, 2026.

---

[7] The defendants also argue that the plaintiffs improperly relied on materials that were privileged and struck from the record.  Having determined that the plaintiffs' offer of proof was insufficient, we need not address this argument.

[8] The panelists are listed in order of seniority.