After a jury trial, the defendant, Darrin J. Leblanc,[2] was convicted of assault and battery and assault and battery by means of a dangerous weapon.[3] On appeal, he argues that his motion to suppress his showup identification was improperly denied. He further presents four asserted errors stemming from his trial, arguing that (1) the testifying emergency medical technician (EMT) improperly opined as to the cause of the victim's injuries; (2) the prosecutor's summary of the victim's testimony in closing argument created a substantial risk of a miscarriage of justice; (3) there was insufficient evidence supporting the defendant's intentional use of a dangerous weapon to permit that conviction; and (4) the two separate charges should have been merged and his assault and battery conviction should be vacated. We affirm.
Background. The following facts were presented to the motion judge: Lynn police were informed of a stabbing in the early morning of May 2, 2015. Two officers responded, one of whom was familiar with past disturbances in that particular neighborhood. Police arrived to view the victim of the stabbing bleeding while being treated by paramedics, and upon speaking to him learned that he had been in a fight with two men and was stabbed by one of them. In describing his attack, the victim told police the second man-the one who stabbed him-was tattooed and had a "real short, [sic ] with a Mohawk-top style haircut." Officer Manny Torres recognized this description as matching the defendant, who lived in the area and was known to Officer Torres.
Officer Torres pulled up the defendant's most recent booking photograph on the screen in his police cruiser and read the victim the standard "showup identification instructions" from a card that he carried with him.[4] The victim immediately identified the photograph shown to him by Officer Torres as the man who had stabbed him. In a separate conversation between different officers in close proximity to where the victim was being treated, one officer may have mentioned the defendant's name to another officer.
The defendant moved to suppress the showup identification, arguing that the procedure police utilized created a substantial risk of misidentification. The judge disagreed, finding that the defendant had not demonstrated that the process used by police in identifying the defendant was "so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny him due process of law." The case proceeded to a jury trial, where the defendant was convicted.
Discussion. a. Motion to suppress. The defendant asserts that the showup identification used by police was unnecessarily suggestive and therefore should have been suppressed. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law." Commonwealth v. Depiero, 473 Mass. 450, 453 (2016), quoting from Commonwealth v. Anderson, 461 Mass. 616, 619, cert. denied, 133 S. Ct. 443 (2012).
We discern no error in the motion judge's findings of fact, and therefore limit our analysis to those facts. Showup identifications, which are essentially one-on-one identification procedures, are generally disfavored by the law because of their inherently suggestive nature. Commonwealth v. Figueroa, 468 Mass. 204, 217 (2014). However, a showup identification "violates due process only where the defendant proves by a preponderance of the evidence that it is 'unnecessarily suggestive' " (emphasis omitted). Ibid., quoting from Commonwealth v. Phillips, 452 Mass. 617, 627-628 (2008). The use of a showup identification must be justified by "good reason." Commonwealth v. Martin, 447 Mass. 274, 279 (2006) (quotation omitted). Good reason has regularly been found in situations where showups are "conducted by the police promptly after the criminal event." Phillips, supra at 628, quoting from Commonwealth v. Bowden, 379 Mass. 472, 479 (1980). Concern for public safety following a violent crime has also been deemed good cause for a showup. See Commonwealth v. Austin, 421 Mass. 357, 364 (1995) ; Phillips, supra at 629.
"Even where there is 'good reason' for a showup identification, it may still be suppressed if the identification procedure so needlessly adds to the suggestiveness inherent in such an identification that it is 'conducive to irreparable mistaken identification.' " Figueroa, 468 Mass. at 217, quoting from Phillips, supra at 628. "In considering whether identification testimony should be suppressed, the judge must examine 'the totality of the circumstances attending the confrontation to determine whether it was unnecessarily suggestive.' " Commonwealth v. Johnson, 473 Mass. 594, 597 (2016), quoting from Commonwealth v. Silva-Santiago, 453 Mass. 782, 795 (2009).
In line with the motion judge's decision, we conclude that the showup identification of the defendant was justified by good cause, and the totality of the circumstances surrounding the identification did not render the process "conducive to irreparable mistaken identification." Figueroa, supra. The defendant does not contest the motion judge's finding that there was good cause for the showup as there was an obvious public safety concern and the identification was made in close temporal proximity to the attack. See Phillips, supra at 628-629. We agree. However, the defendant contends that the circumstances surrounding the identification rendered the process unnecessarily suggestive.
The defendant argues that the victim's admitted drinking earlier in the evening, the lack of lighting at the time of the attack, his injuries, the use of a mug shot of the defendant, and the potential mention of the defendant's name by another officer combined to create a situation "conducive to irreparable mistaken identification." Figueroa, supra. He compares the present case to Commonwealth v. Moon, 380 Mass. 751 (1980), where the Supreme Judicial Court affirmed an order allowing a motion to suppress an identification. In that case, after the witness described his assailant to the police, he overheard an officer say that his description "sound[ed] like Andy Moon." The witness then pointed out an automobile he believed belonged to the man who had assaulted him, after which the police retrieved a wallet from the automobile, removed a photograph from it, and showed the witness the photograph, which he identified as the defendant. Id. at 755.
The defendant's argument fails. The question before us is whether the identification procedure contained "special elements of unfairness [that would] indicat[e] a desire on the part of the police to 'stack the deck' against the defendant." Commonwealth v. Leaster, 395 Mass. 96, 103 (1985). Compare Phillips, supra at 628, where the Supreme Judicial Court held that an identification was not unnecessarily suggestive where the defendant "had been detained in a police wagon, was handcuffed, and was flanked by two police officers" when he was identified. In the present case, Officer Torres recognized the victim's description as potentially matching the defendant, properly sought to alleviate the risk of misidentification through his instructions to the witness, and showed him a recent booking photograph of the defendant, whom the victim immediately identified as his attacker. There is nothing in this case to suggest that the procedure undertaken by police to quickly resolve a public safety concern was "conducive to irreparable mistaken identification." Figueroa, supra. As such, the defendant's motion to suppress his identification was properly denied, and there was no error in allowing the victim to identify the defendant in court during trial.
b. Trial. 1. EMT testimony. The defendant argues that allowing the EMT who treated the victim to opine as to the causes of his injuries was error because she was a lay witness. The challenged testimony is the EMT's description of the victim's injuries as a "long laceration," a "superficial" wound to the abdomen, and a "puncture wound," and her further testimony that those injuries were "consistent with someone who was stabbed with a sharp object."
The defendant contends that this testimony is beyond "general human knowledge and experience," such that it would have required the EMT to be qualified as an expert witness. Pitts v. Wingate at Brighton, Inc., 82 Mass. App. Ct. 285, 289 (2012), quoting from Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 236 n.6 (2005). We review the admission of the EMT's statement that the wounds were consistent with stab wounds to determine whether a prejudicial error occurred. Since we conclude that there could be no prejudice stemming from the admission of this statement, we need not reach the question as to whether it was proper lay witness testimony.
An error is nonprejudicial if "the conviction is sure that the error did not influence the jury, or had but very slight effect." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). In addition to the EMT's statement, there was overwhelming evidence to suggest that the victim had been stabbed, including medical records describing his injuries, a police officer's testimony recalling holding a heavily bloodied towel over the victim's chest, and the victim's own testimony that he had been stabbed and was "gushing" blood. As such, we conclude there was no risk of the EMT's statement influencing the jury's determination that the victim had been stabbed.
2. Closing argument. The defendant further asserts that two misstatements in the Commonwealth's closing argument, which were not objected to at trial, created a substantial risk of a miscarriage of justice. The statements at issue are that the victim "did indicate that the [defendant] punched him, kicked him, and stabbed him in the chest with a sharp object," and that the victim "was able to identify [the defendant] as the person who he fought in the front of his house, who stabbed him in the chest." The defendant contends that since the victim testified only that he thought he had been punched and kicked by the defendant, the prosecutor's recounting of the victim's testimony was factually inaccurate. As such, the defendant asks this court to conclude that the misstatement created a substantial risk of a miscarriage of justice as it relates to the assault and battery by means of a dangerous weapon conviction, such that the court is left with "a serious doubt that the defendant['s] guilt ha[s] been fairly adjudicated." Commonwealth v. Amirault, 424 Mass. 618, 647 (1997). He further claims that defense counsel's failure to object to these portions of the Commonwealth's closing argument amounted to ineffective assistance of counsel, which we review to determine whether, first, the behavior of counsel fell "measurably below that which might be expected from an ordinary fallible lawyer-and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
While we agree with the defendant that the prosecutor misspoke during her closing argument, we perceive no substantial risk of a miscarriage of justice. The evidence that the victim had been stabbed was otherwise very strong, and the prosecutor's misstatements did nothing to significantly confuse the issue for the jury. Furthermore, the judge gave a proper instruction to the jury that closing arguments are not evidence and their deliberations were to be based on their memory of the trial and not dependent on the closing arguments. See Commonwealth v. Bresilla, 470 Mass. 422, 438 (2015), quoting from Commonwealth v. Kozec, 399 Mass. 514, 517 (1987) ("[W]e must and do recognize that closing argument is identified as argument, the jury understand [ ] that, instructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument"). As a result, we conclude that the prosecutor's misstatements in closing argument did not create a substantial risk of a miscarriage of justice. Similarly, we do not discern any "substantial ground of defence" that the defendant was deprived of by his counsel's failure to object to the prosecutor's closing argument, and therefore determine that failure did not amount to ineffective assistance of counsel.
3. Dangerous weapon. The defendant further contends that the Commonwealth failed to present sufficient evidence to support his conviction of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b ), because the Commonwealth did not establish that the victim's injuries stemmed from the defendant's intentional use of a dangerous weapon. See Commonwealth v. Appleby, 380 Mass. 296, 307-308 (1980). We review the defendant's sufficiency argument to "determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient ... to permit the jury to infer the existence of the essential elements of the crime charged." Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).
We conclude that the evidence was more than sufficient to support a finding as to the defendant's intentional use of a dangerous weapon. There was evidence that the defendant, the victim, and a third man argued on the street, and that the argument escalated to a physical altercation between the victim and the third man. The defendant then charged at the victim and struck him, after which the victim was left bleeding heavily from stab wounds. This evidence alone, taken in the light most favorable to the Commonwealth, is sufficient to permit the jury to conclude the defendant intentionally stabbed the victim. The victim's obvious injuries were sufficient to allow the jury to infer a dangerous weapon was used intentionally. Commonwealth v. Roman, 43 Mass. App. Ct. 733, 736 (1997). The defendant's argument is therefore meritless.
4. Separate convictions. The defendant's final asserted error relates to his separate convictions of assault and battery and assault and battery by means of a dangerous weapon. He argues that the assault and battery charge is a lesser included offense of the assault and battery by means of a dangerous weapon charge, and therefore his sentences are duplicative. This argument too lacks merit and need only be addressed briefly. There was clear evidence to suggest that there were two separate and distinct assaults on the victim: first the stabbing, then a kick.[5] The charges would have merged had the two assaults been "so closely related in fact as to constitute in substance but a single crime." Commonwealth v. St. Pierre, 377 Mass. 650, 662-663 (1979). Such was not the case here, and since the evidence established two separate assaults, the separate convictions were supported.
Judgments affirmed.

As is our custom, we spell the defendant's name as it appears in the complaint.

The separate charges stem from two distinct and separate assaults: one a kick, the other a stabbing.

Such instructions seek to alleviate the potential for misidentification at a showup identification, informing the witness that the person in the picture may or may not be the offender and reminding the witness that "it is just as important to clear an innocent person as it is to identify a guilty one."

At trial, the victim testified that after the defendant stabbed him in his right side, he [the victim] fell backwards; as he was trying to get up, the defendant ran towards him and kicked him, trying to "keep [him] on the ground."